Ray O. WILSON, d/b/a Wilson Farms, Appellee,

v.

GIFFORD–HILL & COMPANY, INC., Appellant.

No. 49835.

Court of Appeals of Oklahoma, Division No. 1.

April 26, 1977.

Rehearing Denied June 21, 1977.

Certiorari Denied Sept. 21, 1977.

Released for Publication by Order of Court of Appeals Sept. 22, 1977.

---

Loofbourrow, Loofbourrow & Manske by Robert H. Loofbourrow, Boise City, for appellee.

Ogden, Ogden & Board by Frank M. Ogden, Guymon, for appellant.

ROMANG, Judge.

Ray O. Wilson, d/b/a Wilson Farms, Plaintiff-Appellee (Vendee), signed an order for the purchase of three (3) towable sprinklers on July 19, 1973. The order specifically stated that they were to be installed before May 1, 1974 with one to be installed as soon as possible. The form provided "This contract is subject to acceptance by Gifford-Hill & Company, Inc., at its office in Lubbock, Texas . . . ." After delivery of two sprinklers and the installation of one, the Vendee sued Gifford-Hill & Co., Inc., Defendant-Appellant (Vendor), for damages for the Vendor's failure to deliver and install the third sprinkler.

The Vendor appeals from a judgment on a jury verdict awarding the Vendee $8,000 plus costs and interest. In its brief the Vendor raises three issues:

(1) the alleged contract was invalid for lack of mutuality of obligation;

(2) the jury verdict is not sustained by sufficient evidence; and

(3) the trial court erroneously instructed the jury on the measure of damages and, if properly instructed, the jury could not have found any damages.

## A.

The Vendor argues that the trial court erred in not directing a verdict because there was no evidence showing mutuality of obligation. This argument is based on (1) the lack of any promise by the Vendor to sell the sprinklers and (2) the option held by the Vendee "to cancel 30 days before delivery date."

In the Vendor's motion for a directed verdict he merely stated that the evidence failed to show mutuality of obligation. He did request an instruction on mutuality which was refused. This instruction was as follows:

You are instructed that it is essential to the validity of every contract of this character that there be mutuality of obligation. A contract is not binding on one of the parties unless it is binding on the other.

You are instructed that if you find that either of the parties were not bound by the contract here in question, then and in such event you must find for the defendant.

In ruling on a motion for a directed verdict the trial court must view the evidence and all reasonable inferences favorable to the party opposing the motion. *First Nat. Bank of Porter v. Howard,* 550 P.2d 561 (Okl.1976). Unless the evidence so construed shows a complete absence of proof tending to support the opposing party's claim, the motion must be denied. *Austin v. Wilkerson, Inc.,* 519 P.2d 899 (Okl. 1974).

The trial court in Instruction Number 5 stated:

You are instructed that a contract, whether written or oral, is an agreement between two or more parties, competent to contract, upon a lawful subject matter with a legal consideration, a mutuality of agreement and mutuality of obligation.

No objection was made to the instruction.

While Instruction Number 5 is not a model instruction on the definition of a contract it substantially meets the Vendor's motion for a directed verdict and the requested instruction quoted above. Mutuality of obligation is a confusing concept usually arising in the context of a unilateral contract. But here the evidence, if believed by the jury, could as easily support a bilateral contract involving the exchange of mutual promises. The written agreement was on a form supplied by the Vendor. The form itself provides that "*[t]his contract* is subject to acceptance by" the Vendor (emphasis added). Under the instructions the jury could have concluded that the installation of one sprinkler and the delivery of a second was evidence of acceptance as contemplated by the contract. So construed, both parties were bound unless the provision permitting cancellation by Vendee "30 days before delivery date" made the contract binding only in one direction.

In the context of a unilateral contract the Supreme Court has said that "[i]t is well recognized that contracts may be valid although performance on the part of one party may be optional, or conditional or contingent." *Petroleum Research Corp. v.*

*Barnsdall Refining Corp.,* 188 Okl. 62, 105 P.2d 1047, 1051 (1940). On the same page this rule is explained by the Court in the statement that

The recognition of the latent opportunities for injustice to the performer has led the courts to generally adopt rules that bind the offeror [Vendee here] so long as the offeree [Vendor here] indicates an intention to be bound by his pursuing complete performance.

The text writers have generally viewed the cases as adopting the rule that the reservation of a unilateral right to cancel the entire agreement is so broad as to negate the existence of any consideration in that the promise is essentially empty or illusory. But where notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration. See 1 A Corbin on Contracts § 163 and Calamari and Perillo, Contracts (1970) p. 135. Cf. *Sylvan Crest Sand and Gravel Co. v. United States,* 150 F.2d 642 (2d Cir. 1945).

The language used could have been construed by the jury as a binding agreement to buy or give notice of cancellation under the trial court's instructions. While we are uncertain whether the reservation of a right to cancel was enforceable due to the ambiguity of what the phrase "delivery date" meant (the agreement apparently contemplated 3 deliveries) this issue was nowhere raised and we do not decide it.

We thus conclude that, in light of the record and the manner that the mutuality issue was raised, whether the jury found an exchange of promises or an offer for a unilateral contract with partial performance, that the contract was adequately supported by consideration and, hence, mutual.

**B.**

The Vendor argues that the jury verdict is not sustained by sufficient evidence. We disagree. A review of the rec-

ord discloses ample evidence which, if believed by the jury, would support the Vendee's contention that under a contract to supply and install three (3) sprinklers the Vendor supplied only two (2).

### C.

■ The Vendor's final argument is that even if there were a contract which the Vendor breached the appropriate measure of damages "for nondelivery . . . by the Seller is the difference between the market price at the time the buyer learned of the breach and the contract price together with any incidental and consequential damages . . . but less expenses saved in consequence of the Seller's breach." 12A O.S.1971, § 2–713(1). The Vendor argues that its breach, if it occurred at all, must have occurred on April 30, 1974 since the contract provided for full performance by that date. If so, the Vendor notes that a subsequent price increase had not yet occurred and the difference between market and contract price was zero. In the alternative, the Vendor argues that there was no evidence of market price on April 30, 1974 or on the later August, 1974 date which the Vendee asserts is the time of breach.

The trial court instructed the jury that "the measure of damages for the breach of a contract for the sale of personal property is the difference between the contract price and the market price at the time delivery should have been made under the contract." Instruction Number 7.

The Vendee contended that the Vendor had told the Vendee that a new sprinkler was about to be received by the Vendor and that the Vendee and another were in line to receive this sprinkler. The Vendee asserts that it agreed for this sprinkler to be delivered to the other and that the Vendee would take the other party's sprinkler when it arrived. In August, 1974 the Vendor expressly refused to deliver the third sprinkler at the contract price.

There was testimony that sprinklers were in short supply and that the Vendee did not wish to press the Vendor because the Vendee recognized the Vendor's problem with delivery. It would appear that the jury could have reasonably concluded that the time for delivery under the contract was waived by the Vendor and the Vendee (for whose benefit the term was apparently inserted since it forms no part of the printed language) and that, therefore, actual repudiation of the remaining obligation did not occur until the express refusal to perform came in August, 1974.

While the Vendor challenges Instruction Number 7, supra, it is more favorable to the Vendor's position by adopting the date set for delivery under the contract than 12A O.S.1971, § 2–713(1) which adopted the date the "Buyer learned of the breach . . ."

The contract price for each sprinkler was $18,580. The evidence indicates that in May, 1974 another party bought a sprinkler under a contract price of $25,819. The Vendee testified that he was told in August, 1974 that to get the third sprinkler it would cost an additional $8,000. While this evidence is far from decisive, it was for the jury to determine its probative worth.

We find the errors urged on appeal are not well founded and affirm the judgment below.

AFFIRMED.

REYNOLDS, P. J., and BOX, J., concur.