**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GALE D. GIBSON, formerly known
as Gale D. Widmer,

    Plaintiff - Appellant,

    v.

WAL-MART STORES INC., a
Delaware Corporation; BECKY
BROOKS,

    Defendants - Appellees.

No. 98-8040

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 97-CV-1044- B)**

---

James R. McCarty, Casper, Wyoming, for Plaintiff-Appellant.

Rosemary Orsini (David P. Hersh, Diane Vaksdal Smith on the brief), Burg &
Eldredge, Englewood, Colorado, for Defendants-Appellees.

---

Before **PORFILIO,  MAGILL,**[*]  and **LUCERO,** Circuit Judges.

---

**MAGILL,** Circuit Judge.

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for
the Eighth Circuit, sitting by designation.

Several years after being injured while stocking shelves at a Wal-Mart Stores, Inc. (Wal-Mart) store and receiving more than $31,000 in benefits from Wal-Mart's private workers' compensation plan, Gale Gibson brought this action against Wal-Mart and Becky Brooks, a former co-employee, alleging that they negligently caused her injuries. Gibson appeals the district court's order granting Wal-Mart's motion to compel arbitration and dismissing her claims. We affirm.

## I.

On December 17, 1993, Gale Gibson and Becky Brooks were moving stock in the back room of a Wal-Mart store located in Wyoming. Gibson was injured when a box being placed on top of a shelf by Brooks fell on her. While at work nearly a week later, on December 22, 1993, Gibson determined that she needed to see a doctor because of her injuries. She asked the store's assistant manager, Jim Miller, whether Wal-Mart would pay for her to see a doctor. Miller told her that Wal-Mart would pay for her medical expenses only if she signed some release papers and sought benefits through Wal-Mart's private workers' compensation plan. Miller also told her that her health insurance (secured through Wal-Mart) would not cover her medical expenses because her injury was work-related. Later that day, Gibson went to the store manager, Gary Powers, and asked to sign the release papers. Powers presented her with a "WAIVER AND RELEASE OF

RIGHT TO SUE" agreement (the Agreement), which Gibson signed without reading.

In the Agreement, Gibson "expressly and voluntarily waive[d] and release[d] . . . any and all rights which he/she may have to file any independent action in any court against Wal-Mart, its officers, directors, employees, agents or attorneys as the result of any accident . . . which arises in any manner out of [her] employment with Wal-Mart." Agreement at 1. She "acknowledge[d] that if he/she does file any action against Wal-Mart as the result of any occupational injury . . ., he/she forfeits all benefits under Wal-Mart's workers' compensation plan . . . ." Id. She also "agree[d] to arbitrate any disputes as to entitlement to benefits under Wal-Mart's workers' compensation plan, which shall be a full and final resolution, binding on both parties." Id. In addition, she acknowledged that she "underst[oo]d the nature of this waiver and release" and that she "ha[d] been given the opportunity to review completely the Workers' Compensation Plan of Wal-Mart . . . [and] to consult with counsel of his/her choosing prior to signing this document." Id. at 1-2. In consideration for this release and waiver, Wal-Mart maintained a private workers' compensation plan and agreed to pay benefits to Gibson under the terms of that plan.

After signing the Agreement, Gibson received more than $31,000 in benefits under Wal-Mart's workers' compensation plan over several years. The

plan ceased paying benefits to Gibson when two independent doctors diagnosed her as having attained her point of maximum medical improvement. Notwithstanding the doctors' diagnoses and the termination of her benefits, Gibson continued to seek medical treatment and incur expenses. She then filed this diversity action against Wal-Mart and Brooks, alleging that they were liable for her injuries. Invoking the Agreement and its arbitration clause, Wal-Mart filed a motion to compel arbitration. The district court granted the motion and dismissed the lawsuit.

## II.

We review a district court's grant of a motion to compel arbitration de novo. See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 796 (10th Cir. 1995). The parties agree that we should review the record under the standard for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we examine the evidence in the light most favorable to the nonmoving party, Gibson. See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1999). "If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Wolf v. Prudential

Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995).  Because this is a diversity case, we review the district court's determinations of state law, in this case Wyoming law,[1] de novo.  See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

In Wyoming, "[t]he right to submit a dispute to arbitration is contractual," Jackson State Bank v. Homar, 837 P.2d 1081, 1085 (Wyo. 1992), and a written agreement between an employer and an employee "to submit any existing or future controversy to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of the contract." Wyoming Stat. § 1-36-103.  Gibson contends that she did not contractually agree to arbitrate the present dispute and, even if she did, the Agreement is invalid and unenforceable on both legal and equitable grounds.  We address these contentions in reverse order.

### A.    The Agreement is enforceable.

Gibson asserts legal and equitable grounds for revoking the Agreement. She first contends that the Agreement is void and unenforceable because it violates two provisions of the Wyoming Constitution and one Wyoming statute. She also argues that the Agreement is void and unenforceable because she signed it under duress.  See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912

---

[1]It is undisputed that Wyoming law applies in this case.

F.2d 1238, 1241 (10th Cir. 1990) ("Under Wyoming law a contract may be cancelled because of duress."). We disagree with both contentions.

1. The Agreement is valid under Wyoming law.

Gibson contends that the Agreement violates Article 10, § 4 and Article 19, § 7, of the Wyoming Constitution, as well as Wyoming Statute § 27-1-105. However, it is clear from the express language of these constitutional and statutory provisions that they are not applicable to the Agreement.

The Agreement does not violate Article 10, § 4 of the Wyoming Constitution. That section provides, in relevant part, that "[a]ny contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void." Wyo. Const. art. 10, § 4. In this case, the Agreement specifically provides for Gibson to recover benefits for her injuries and, in fact, she received more than $31,000 in benefits from Wal-Mart's workers' compensation plan. Accordingly, the Agreement does not run afoul of Article 10, § 4. See Lea v. D&S Casing Serv., Inc. (In re Lea), 707 P.2d 754, 755-56 (Wyo. 1985) (holding that a stipulation entered into between an employer and employee providing for the employer to pay a fixed amount of workers compensation benefits was binding and "was not an agreement 'waiving

any right to recover damages for causing the death or injury of any employee' prohibited by Article 10, § 4").

The Agreement also does not violate either Article 19, § 7 of the Wyoming Constitution or Wyoming Statute § 27-1-105. This constitutional provision and statute prohibit an employer from conditioning employment on an employee's assent to a release or discharge from liability for injuries occurring in the course of employment.[2] Here, however, there is no evidence that Wal-Mart conditioned

_____

[2]Article 19, § 7 provides:

It shall be unlawful for any person, company or corporation, to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility, on account of personal injuries received by such servants or employees, while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employees thereof, and such contracts shall be absolutely null and void.

Wyo. Const. art. 19, § 17.

The statute provides:

It shall be unlawful for any person, company or corporation to require of its servants or employees, as a condition of their employment or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility on account of personal injuries received by such servants or employees while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employees thereof, and such contracts shall be absolutely null and void.

(continued...)

Gibson's employment on her assent to any release of liability. Moreover, the Agreement does not operate to release Wal-Mart from liability or responsibility for Gibson's injuries. Rather, Wal-Mart, through its private workers' compensation plan, accepted liability for Gibson's injuries and paid her more than $31,000. See Lea, 707 P.2d at 756 (finding that an employer's stipulation to pay a fixed amount of workers' compensation benefits to its employee "did not operate to relieve the employer from liability," but demonstrated that "the employer accepted liability"). Accordingly, we hold that the Agreement does not violate either Article 19, § 7 or § 27-1-105.

    2.    <u>There was no duress</u>.

Gibson also asserts that the Agreement is void because she signed it under duress. The facts do not support this assertion.

Gibson, the party seeking to cancel the Agreement, bears the burden of proving that she signed it under duress. See Goodson v. Smith, 243 P.2d 163, 171 (Wyo. 1952). "[D]uress exists whenever a person is induced, by the unlawful act of another, to perform some act under circumstances which deprive him of the existence of free will." In re TR, 777 P.2d 1106, 1111 (Wyo. 1989). "Therefore, in order to show duress in Wyoming a party must show deprivation of free will

_____

    [2](...continued)
Wyo. Stat. § 27-1-105.

-8-

because of the unlawful act of another." Applied Genetics, 912 F.2d at 1241-42. Whether particular facts are sufficient to constitute duress is a question of law. See Blubaugh v. Turner, 842 P.2d 1072, 1074 (Wyo. 1992).

Gibson contends that she signed the Agreement because she understood that she would not be reimbursed for her medical bills if she failed to do so. In essence, Gibson is raising an economic duress claim, i.e., Wal-Mart threatened not to cover her medical expenses and she had no economically viable choice other than to sign the Agreement in light of that threat. Wyoming courts have recognized economic duress and held that "economic duress occurs when (1) a party involuntarily accepts the terms of another, (2) circumstances permit no other alternative, and (3) such circumstances are the result of coercive acts of the other party." Id. at 1075. "Economic duress does not exist, however, unless a person has been the victim of a wrongful act and has no reasonable alternative but to agree with the terms of another or be faced with a serious financial hardship." Id. "'Thus, in order to avoid a contract, a party must . . . show that he had no reasonable alternative to agreeing to the other party's terms, or, as it is often stated, that he had no adequate remedy if the [other party's] threat were to be carried out.'" Id. at 1076 (quoting Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co., 584 P.2d 15, 22 (Alaska 1978)).

In this case, we fail to see that Wal-Mart committed any wrongful or unlawful act. Although Gibson alleges that requiring her to sign the Agreement violated Wyoming law, we have already rejected this contention. Moreover, we hold that Gibson has failed to present sufficient facts to demonstrate that she had no alternative but to sign the Agreement. Specifically, she "wholly failed to present anything which would in any way indicate that, if [she] did not sign the agreement, [she] would face such immediate financial ruin that [she] could not seek" other remedies at law. Id. She did not present any evidence regarding her ability or inability to pay for her medical expenses as of the day she signed the Agreement. Similarly, she failed to introduce any evidence suggesting that she could not seek remedies at law in the event that Wal-Mart refused to pay for her medical expenses because of her refusal to sign the Agreement. In fact, her conduct immediately prior to filing this suit--willfully incurring medical expenses notwithstanding the Wal-Mart plan's refusal to disburse any more benefits-- suggests that Gibson was not economically coerced.

In further support of her duress argument, Gibson complains that she was not given any time to deliberate on the Agreement, she was not told that she had a right to consult with an attorney, she was not encouraged to consult with an attorney, she was unable to negotiate the terms of the Agreement, and she was suffering from some physical discomfort at the time she signed the Agreement.

-10-

See Torrez v. Public Serv. Co. of N.M., Inc., 908 F.2d 687, 689-90 (10th Cir. 1990) (per curiam) (explaining that, in determining whether party acted voluntarily in signing a release and waiver, the court should consider, inter alia, "'the amount of time plaintiff had for deliberation about the release before signing it[,] . . . whether plaintiff was encouraged to seek, or in fact received benefit of counsel'" and "'whether there was an opportunity for negotiation of the terms of the Agreement'" (quoting Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir. 1988))). However, we do not believe that these allegations, either individually or collectively, support a finding of duress. See Blubaugh, 842 P.2d at 1075-76 (finding that a release of liability agreement was not signed under economic duress when the plaintiff did not have the opportunity to negotiate the terms of his release, was in shock and distraught at the time he signed the release, and was not told that he had a right to consult with an attorney).

Initially, we point out that Gibson had an opportunity to review the Agreement, and the Agreement specifically provides that Gibson was given the opportunity to consult with counsel. Rather than presenting any evidence to the contrary, Gibson testified in her deposition that she chose to sign the Agreement without reading it. We will not credit her deliberate refusal to read the Agreement as supporting an inference that she had no opportunity to either consider the Agreement or consult with an attorney about the Agreement.

-11-

Regardless, the Wyoming Supreme Court has explained that "[n]egotiations through counsel are not the sine qua non of a valid contract" and, thus, a failure to consult with counsel does not require a finding of duress. Id. at 1076. Similarly, Gibson's inability to negotiate the terms of the Agreement does not amount to duress. See id. Likewise, the mere fact that Gibson was suffering from some physical discomfort at the time she signed the Agreement does not constitute duress. See Goodson, 243 P.2d at 171 (holding that duress was not established even though plaintiff signed deed late at night, when she was tired, in a smoke-filled room in which "there was a good deal of talking . . . causing confusion"); cf. Blubaugh, 842 P.2d at 1076 (explaining that plaintiff had not demonstrated duress when he signed the contract when "in shock and distraught" because "[e]motional distress is not the equivalent of duress"). Moreover, these circumstances in their totality fail to constitute duress. See id.

> We believe that this case is one involving
>
> "someone who was initially satisfied with his settlement, but who, upon subsequent reflection, concludes that he could have gotten more out of the deal and therefore attempts to renege on it. However, it is well settled that the mere fact of an improvident or bad bargain or a feeling of latent discontent is not a sufficient basis to avoid the effect of an otherwise valid release."

Id. at 1077 (quoting Horgan v. Industrial Design Corp., 657 P.2d 751, 754 (Utah 1982)). Thus, we hold that the undisputed material facts do not constitute sufficient duress to invalidate the Agreement.

-12-

**B. The arbitration clause applies to this dispute.**

Gibson contends that, even if the Agreement is enforceable, the Agreement's arbitration clause does not apply to the present dispute. We disagree.

Because arbitration is a matter of contract, a party may not be required to arbitrate a dispute "unless it has agreed to arbitration of that dispute." American Nat'l Bank of Denver v. Cheyenne Hous. Auth., 562 P.2d 1017, 1020 (Wyo. 1977). "By the same token, a party should not be required to litigate disputes which are subject to an arbitration agreement, and there is . . . a strong policy favoring arbitration of disputes where the parties have bargained for this procedure in their contract." Id. "In the face of an arbitration clause which is couched in broad terms, litigation instead of arbitration should not be available at the option of a party." Id.

In this case, Gibson executed the Agreement for the express purpose of receiving coverage for her medical expenses. The Agreement provides that medical expenses are covered only under the terms of Wal-Mart's workers' compensation plan. In the Agreement, Gibson "acknowledge[d] that if he/she executes this [Agreement] that he/she is agreeing to arbitrate any disputes as to entitlement to benefits under Wal-Mart's workers' compensation plan." Agreement at 1 (emphasis added). She also "expressly and voluntarily waive[d]

-13-

and release[d] . . . any and all rights which he/she may have to file any independent action in any court against Wal-Mart, its officers, directors, employees, agents or attorneys as the result of any accident . . . which arises in any manner out of [her] employment with Wal-Mart." Id. By signing the Agreement and accepting benefits under Wal-Mart's plan, Gibson thus clearly waived her right to bring this suit against Wal-Mart and agreed to arbitrate all disputes concerning her eligibility for benefits under its plan.

**III.**

Gibson raises a few other challenges which we dismiss summarily. First, she argues that Wal-Mart has waived its right to enforce the Agreement because it has stopped paying her any benefits under the workers' compensation plan. However, the Agreement specifically provides that any disputes as to benefits under the plan are to be resolved through arbitration. Rather than waiving its right to enforce the Agreement, Wal-Mart is specifically attempting to enforce the terms of the Agreement by seeking arbitration of her eligibility for further benefits. Second, Gibson argues that the district court improperly dismissed her claims against Brooks. However, the Agreement specifically provides that Gibson has waived and released her claims against not only Wal-Mart, but also Wal-Mart's employees. There is no dispute that Brooks is a Wal-Mart employee,

and the mere fact that Brooks did not join in Wal-Mart's motion to compel

arbitration does not render the district court's ruling erroneous. Cf. Malak v.

Associated Physicians, Inc., 784 F.2d 277, 280 (7th Cir. 1986) ("where one

defendant files a motion for summary judgment which the court grants, the

district court may sua sponte enter summary judgment in favor of additional non-

moving defendants if the motion raised by the first defendant is equally effective

in barring the claim against the other defendants and the plaintiff had an adequate

opportunity to argue in opposition to the motion").[3]


**IV.**

For the foregoing reasons, we AFFIRM the district court.

---

[3]The fact that Brooks did not individually sign the Agreement does not preclude enforcement of the Agreement with respect to Gibson's claims against her because it is clear that Brooks was, at the very least, a third party beneficiary of the Agreement. See MS Dealer Serv. Corp. v. Franklin, --- F.3d ---, No. 98-6699, 1999 WL 342495, at *3 (11th Cir. May 28, 1999) (explaining that a nonsignatory may enforce an arbitration agreement under a third party beneficiary theory when the parties to the agreement have agreed, upon the formation of their agreement, to confer the benefits thereof to the nonsignatory); Ex parte Gray, 686 So.2d 250, 251 (Ala. 1996) (individual defendant could compel arbitration of claims arising from his actions as co-defendant's employee, notwithstanding fact that he was not a signatory to arbitration agreement between plaintiff and co-defendant, because "[a] party should not be able to avoid an arbitration agreement merely by suing an employee of a principal"); cf. Arnold .v Arnold Corp.--Printed Communications for Bus., 920 F.2d 1269, 1281 (6th Cir. 1990) (citing cases from several circuits for the proposition that nonsignatories of arbitration agreements may be bound by such agreements under ordinary contract and agency principles).

-15-