**Jessie PIERCE and Cecil Elizondo, Plaintiffs,**

v.

**KELLOGG, BROWN & ROOT, INC., Defendant.**

**No. CIV.02–654–S.**

United States District Court, E.D. Oklahoma.

Feb. 7, 2003.

Mark Hammons, Traci L. Rhone, Oklahoma City, for Plaintiff.

Sam R. Fulkerson, Oklahoma City, Michael J. Muskat, Houston, TX, for Defendant.

## *ORDER*

SEAY, District Judge.

Defendant, Kellogg, Brown & Root, Inc. ("KBR"), has filed a motion to compel arbitration of Plaintiffs' claims and to stay this action pending compliance with its Dispute Resolution Program ("DRP").[1] Plaintiffs, Jessie Pierce ("Pierce") and Cecil Elizondo ("Elizondo"), former employees of KBR, have filed a response in opposition to KBR's motion. For the reasons stated below, the court sustains KBR's motion.

Plaintiffs bring this action against KBR under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, alleging KBR's termination of their employment on May 17, 2002, constituted age discrimination and retaliation in violation of the ADEA.[2] Elizondo, who is Hispanic, also asserts a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and 42 U.S.C. § 1981, claiming he was discriminated against with respect to his employment on the basis of his national origin. In its motion, KBR argues that all claims asserted by Plaintiffs are employment related disputes subject to arbitration under the provisions of the DRP. Under the terms of the DRP, employment disputes between an employee and KBR are subject to final and binding arbitration before an independent and impartial arbitrator appointed by the American Arbitration Association or other independent dispute resolution association. *See* KBR's Motion to Compel Arbitration, Ex. C, Attachment 6, at 6, ¶ 10 (proceedings under the DRP are "the exclusive, final and binding method by which Disputes are resolved). Included within the DRP's definition of 'disputes' are matters related to discrimination based on ... national origin, [and] age ...." *Id.* at 2. It is KBR's position that the mandatory arbitration provisions of the DRP are enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and that Plaintiffs should be compelled to submit

---

1. The dispute resolution program at issue with respect to Plaintiffs' employment with KBR is actually denominated as the Halliburton Dispute Resolution Program. The scope of the DRP's coverage, however, includes KBR, a subsidiary of Halliburton Company ("Halliburton").

2. Plaintiffs assert a separate claim of age discrimination under Oklahoma's anti-discrimination statute, 25 O.S. §§ 1101 *et seq.*

their employment discrimination claims to final and binding arbitration.

In opposition to KBR's motion, Plaintiffs contend the court should not enforce the arbitration provisions of the DRP because (1) the DRP is illusory and (2) there is an absence of proof as to Plaintiffs' agreement to arbitrate. With respect to their argument that the DRP is illusory, Plaintiffs contend the inclusion in the DRP of a provision allowing for KBR to amend or terminate the DRP "at any time by giving at least 10 days notice to current Employees," renders the DRP illusory and unenforceable. KBR's Motion to Compel Arbitration, Ex. C, Attachment 6, at 5, ¶¶ 6 and 7. As to the issue of Plaintiffs' agreement to arbitrate, Plaintiffs contend there is no proof in the record that they had actual notice of the terms of the DRP. The court rejects both arguments asserted by Plaintiffs in opposition to the enforcement of the DRP.

■ The FAA governs arbitration agreements which are contained within contracts involving interstate commerce.[3] The FAA embodies a "liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Under the FAA, there is "a presumption in favor of arbitrability and courts must resolve all doubts concerning the scope of arbitrable issues in favor of arbitration." *Shankle v. B–G Maintenance Management of Colorado*, 163 F.3d 1230, 1233 (10th Cir.1999).

■ In relevant part, the FAA mandates that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and provides for the stay of an action until arbitration proceedings have been completed, 9 U.S.C. § 3.[4] Section 2 has the effect of creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA's primary purpose is "to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (citing H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)) (footnote omitted); *see also Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 837, 130 L.Ed.2d 753 (1995) ("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate."); *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927 ("Section 2 is a

---

3. No dispute exists as to the interstate component of the DRP. The affidavits of Gary Fowler ("Fowler") and Elmer Thurman ("Thurman"), both maintenance supervisors at the Weyerhaeuser project in Valliant, Oklahoma, where KBR provided maintenance services to Weyerhaeuser, establish the interstate nexus of Plaintiffs' activities. Plaintiffs provided services in connection with Weyerhaeuser machinery which produced paper products for shipment and delivery throughout the United States. *See* Ex. A (Fowler Affidavit) and Ex. B (Thurman Affidavit) to KBR's Motion to Compel Arbitration.

4. Sections 3 and 4 of the FAA are the provisions for the enforcement of arbitration rights. Where an issue is arbitrable and one of the parties to the action makes application, section 3 provides for a stay of the trial of an action until arbitration has been completed. Under section 4, where a party has failed or refused to arbitrate under a written agreement for arbitration, the other party may petition the court for an order compelling arbitration. Given the pendency of this action, section 3 is the appropriate provision to be invoked by KBR.

congressional declaration of a liberal policy favoring arbitration agreements."). Arbitration, however, can only be compelled if a valid agreement to arbitrate exists between the parties and the specific dispute at issue falls within the scope of that agreement. *See Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1515–16 (10th Cir.1995) (a valid arbitration agreement and a dispute within the scope of that agreement are condition precedents to arbitration); *Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 694–95 (8th Cir.1994) ("Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement.").

■ There is no dispute about Plaintiffs' claims falling within the scope of the DRP. Plaintiffs' employment discrimination claims based on age, retaliation, and national origin are clearly encompassed within the definition of "disputes" under the DRP. Plaintiffs' arguments in opposition to arbitration do, however, implicate the issue of whether a valid agreement to arbitrate exists between the parties. Plaintiffs initially argue that the arbitration agreement is illusory because KBR may amend or terminate the DRP at any time upon 10 days notice. In support of this argument, Plaintiffs rely on *Dumais v. American Golf Corp.,* 299 F.3d 1216 (10th Cir.2002), a case in which the Tenth Circuit determined an arbitration agreement was illusory the language of the agreement granted the employer the unfettered right to alter

the existence of the agreement. *Dumais,* however, is clearly distinguishable from the facts of this case. In *Dumais* there was absolutely no limitation on the employer's ability to modify the agreement.[5] In contrast, under the terms of the DRP, KBR could only amend or terminate the DRP "by giving at least 10 days notice to current Employees." KBR's Motion to Compel Arbitration, Ex. C, Attachment 6, at 5, ¶¶ 6 and 7. In addition, any amendment would not derail existing arbitration proceedings as the DRP provides that neither an amendment of the DRP nor its termination shall be effective as to disputes "for which a proceeding has been initiated pursuant to the Rules." *Id.* This prospective application of the amendment or termination provisions, when combined with the ten-day notice provision, constitutes a significant limitation on KBR's right to modify, amend, or cancel such that the agreement to arbitrate is not an illusory one. Thus, the court concludes that the amendment and termination provisions of the DRP do not render the parties' agreement to arbitrate illusory and, moreover, that the DRP is supported by sufficient consideration in the form of the parties' mutual promises to forego litigation of their disputes.[6] *See In re Halliburton,* 80 S.W.3d 566, 569–70 (Tex.2002)(Halliburton's DRP not illusory as company cannot instantaneously amend or cancel agreement), *cert. denied,* —— U.S. ——, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *cf. Hull v. Norcom, Inc.,* 750 F.2d 1547, 1550 (11th Cir.1985)(mutual agreement to arbitrate was effectively abrogated by additional provision which granted one party

---

**5.** The provision of the employer's handbook at issue in *Dumais* reserved in the employer "the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," with the exception of the employee's employment at-will status. *Dumais,* 299 F.3d at 1217.

**6.** Additional consideration supporting the agreement exists in the form of KBR's authorization for payment of employees' legal fees, up to $2,500.00, for legal services in connection with the resolution of disputes under the DRP. KBR's Motion to Compel Arbitration, Ex. C, Attachment 7, at 12 and 15.

the unilateral right to resort to a judicial forum in the event of any breach of the agreement by the opposing party); *Wilson v. Gifford Hill & Co.*, 570 P.2d 624, 626 (Okla.Ct.App.1977)(notice of termination requirement under contract was sufficient consideration); *Hellenic Lines, Limited v. Louis Dreyfus Corp.*, 372 F.2d 753 (2d Cir.1967)(parties' mutual promises to arbitrate supports consideration necessary to enforce arbitration provision).

 As part of their second and final argument attacking the validity of the DRP, Plaintiffs contend KBR has failed to satisfy its burden of establishing Plaintiffs' receipt of notice of the implementation of the DRP. The court disagrees. The evidence presented in support of KBR's motion establishes that in 1997, 1998, and 1999 Halliburton coordinated and prepared the mailing of notices to all employees announcing the implementation of the DRP.[7] To accomplish this mailing, Halliburton contracted with Reynolds & Reynolds, Inc. ("R & R"), a company that provides printing and mailing services for corporate clients. R & R provided the printing services for those documents Halliburton intended to send as part of its mailing in connection with the dissemination of the DRP. R & R, in turn, subcontracted with National Mail Advertising ("National") to perform the tasks of insertion, addressing, and mailing. The names and addresses of all employees who were

to be sent the DRP materials were provided by means of computer tape to R & R by Halliburton. R & R delivered this computer tape along with the printed documents to National for mailing to KBR's employees. The notices of the DRP which were sent to all employees listed on the computer tape included a copy of the DRP's Plan and Rules, a descriptive brochure, and a transmittal letter.[8] On each occasion, Plaintiffs were included within the mailing list of employees who were sent materials related to the DRP. Halliburton maintained a record of all DRP packets which were found undeliverable and returned. None of the packets sent to Plaintiffs were returned.[9]

Plaintiffs argue KBR's evidence of mailing is insufficient to satisfy its burden of proving notice[10]. Plaintiffs contend the affidavits submitted by KBR as evidence of the mailing process are insufficient because they fail to show a copy of addressed envelopes with proper postage affixed and, further, that no affiant states he or she personally performed the tasks associated with the mailing. The court rejects Plaintiffs' attempt to impose a requirement on KBR to provide affidavits from those actually performing the ministerial tasks associated with the mailing of the DRP. Rather, KBR can satisfy its burden of proving notice through evidence establishing customary mailing practices—such evidence having the effect of creating a rebuttable

---

7. The record also establishes mailings of an earlier version of the DRP to KBR's employees, including Plaintiffs, in May 1993 and November 1994.

8. As the 1998 mailing resulted from the discovery of typographical and other errors associated with the DRP mailed in 1997, Hallburton sent only a transmittal letter and a revised copy of the DRP Plan and Rules in the 1998 mailing.

9. Details of the mailing process utilized by Halliburton is set forth in the following affida-

vits attached to KBR's Motion to Compel Arbitration: Ex. C, affidavit of Melinda Miner, dispute resolution analyst for Halliburton; Exs. D and F, affidavits of Stephen R. Davison, employee of R & R responsible for printing DRP documents; and Ex. E, affidavit of Ronald Garrow, President of National.

10. It should be noted that neither Plaintiff denies receipt of the DRP, but rather, their argument is based on KBR's failure to satisfy its burden of proof as to notice.

presumption of receipt of the mailing. *See e.g. Davis v. United States Postal Service,* 142 F.3d 1334, 1340 (10th Cir.1998) and *Wells Fargo Bus. Credit v. Kozloff,* 695 F.2d 940, 944 (5th Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Given the extensive evidence in the record of the mailing practices utilized by KBR with respect to the DRP and the absence of any evidence rebutting the presumption of receipt by Plaintiffs, the court concludes Plaintiffs received notice of the DRP. Consequently, Plaintiffs' claims are subject to final and binding arbitration under the terms of the DRP.

Anticipating a ruling compelling arbitration, Plaintiffs ask to be excused from the DRP's $50 filing fee requirement and its mediation provision. With respect to the filing fee, the court finds no basis for relieving Plaintiffs from this obligation. Under the DRP, KBR is responsible for all costs associated with mediation and arbitration, except for the $50 filing fee covering the costs of initiating such proceedings. Absent any evidence that such filing fee provision places Plaintiffs "between the proverbial rock and a hard place—it prohibit[s] use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limit[s] use of the arbitral forum," the court finds no basis for modification. *Shankle,* 163 F.3d at 1233–36. Finally, with respect to Plaintiffs' objection to a perceived obligation to mediate under the DRP, the court finds no impediment to the enforcement of the arbitration provisions as the DRP requires mediation only if both parties agree to mediation in the first instance. KBR's Motion to Compel, Ex. C, Attachment 6, at 9, ¶ 4.

Based on the foregoing reasons, KBR's motion to compel arbitration is granted. The parties are directed to submit Plaintiffs' claims to arbitration in accordance with the provisions of the DRP. This action is further ordered stayed pending resolution of the arbitration proceedings.