**F I L E D**

PUBLISH
**October 6, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHELLE HARDIN,

> Plaintiff-Appellee/
> Cross-Appellant,

> v.

FIRST CASH FINANCIAL
SERVICES, INC., d/b/a FIRST CASH
AUTO PAWN,

> Defendant-Appellant/
> Cross-Appellee.

Nos. 05-6090 and 05-6107

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-04-421-C)**

---

Byron G. Lee, Coats Rose Yale Ryman & Lee, P.C. Houston, Texas (Patrick E. Gaas and Heather E. Asselin, Coats Rose Yale Ryman & Lee, P.C., Houston, Texas, and G. Rudy Hiersche, Jr., Hiersche Law Firm, Oklahoma City, Oklahoma, with him on the briefs) for Defendant-Appellant/Cross-Appellee.

Mark E. Hammons, Sr. (Tamara L. Gowens with him on the briefs), Hammons, Gowens & Associates, Oklahoma City, Oklahoma, for Plaintiff-Appellee/Cross-Appellant.

---

Before **HARTZ**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Shelle Hardin brought suit in federal district court alleging sex discrimination by her former employer, First Cash Financial Services. First Cash moved to compel arbitration pursuant to its newly adopted arbitration agreement. The court dismissed this motion, finding that Hardin had not agreed to be bound by the arbitration agreement. First Cash appealed pursuant to 9 U.S.C. § 16(a) of the Federal Arbitration Act (FAA) and moved for a stay pending resolution of its appeal. The district court granted this motion and Hardin cross-appealed the stay.

This appeal requires us to resolve three issues: (1) the scope of both the district court's and this court's jurisdiction during the appeal; (2) whether an employee's continued employment acts to accept an employer's unilateral changes to an at-will employment contract under Oklahoma law; and (3) whether First Cash's arbitration agreement is unenforceable under Oklahoma law.

For the reasons discussed below, we affirm in part and reverse and remand in part with instructions to compel arbitration.

## I. Background

### A. Facts

First Cash operates over 200 pawnshops and check cashing stores throughout the United States. In 1997, First Cash hired Shelle Hardin as a manager for one of its Oklahoma stores. At that time, First Cash did not require its employees to settle disputes through arbitration.

Beginning in December 2002, however, First Cash created a Dispute Resolution Program (DRP), which requires its employees to submit all employment-related legal disputes to arbitration. First Cash distributed copies of the DRP, along with a Dispute Resolution Agreement (Agreement) to every employee. In the letter accompanying this package, First Cash told the employees they would not immediately be bound by the DRP but could voluntarily opt into it any time before March 1, 2003. After that time, participation became mandatory, and an employee's continued employment constituted acceptance of the terms of the DRP. The Agreement, although allowing for the employee's signature, reiterated that an employee's continued employment with the company after March 1 would act to accept its terms regardless of whether the employee actually signed the Agreement.

Shortly after receiving these materials, Hardin discussed the DRP with her supervisor and unequivocally refused to consent to the DRP. Hardin stated that, although she would not quit, her continued employment was not intended to serve as her assent. Her supervisor responded that despite her statements to the contrary her continued employment with First Cash would manifest her acceptance. There was no further communication between Hardin and First Cash, and Hardin never signed the Agreement.

In early 2003, First Cash posted a notice in its stores cautioning its employees of the DRP's mandatory character. It read: "This posting is a reminder

to all employees that (by virtue of being employed with the Company on and after March 1, 2003) they agree to resolve all legal claims against the Company through the Dispute Resolution Program . . . ." Cross-Aplt. App. at 44. Yet, despite Hardin's discussion with her supervisor, the explicit terms of the Agreement, and the posting, Hardin continued to work as a manager for First Cash after March 1.

In December 2003, First Cash fired Hardin, and Hardin subsequently filed suit in federal district court alleging sex discrimination. First Cash moved to compel arbitration, claiming that Hardin was bound by the DRP.

## B. District Court Proceedings

The district court found that Hardin was not bound by the DRP and denied First Cash's motion to compel arbitration. Citing Oklahoma law, the court noted that while an employee's continued employment could act to accept changes to an at-will employment contract, acceptance must be absolute and unqualified. The court concluded Hardin's conduct did not meet this standard as evidenced by (1) her failure to sign the Agreement,[1] and (2) her unequivocal statements to her

---

[1] Although a party's failure to sign a contract can render such contract invalid under Oklahoma's Statute of Frauds, it did not do so here where the contract at issue was at-will and therefore could be performed within one-year. *See* Okla. Stat. tit. 15, § 136(1) (requiring that a contract be in writing and signed by the party to be charged unless capable of being "performed within a year from the making [thereof]"); *Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 679 (10th Cir. 1990) (noting that under Oklahoma law indefinite duration contracts need not be in writing nor signed by the party to be charged); *see also Burk v. K-Mart*
(continued...)

supervisor.  The court construed Hardin's conduct as a counteroffer, which First

Cash accepted by failing to terminate her employment.

## II.  Analysis

We face three issues on appeal.  First, we address two preliminary matters:

(1) whether the district court erred in granting First Cash's motion to stay, and

(2) whether this court has subject matter jurisdiction to hear the appeal.  If we

have jurisdiction, we consider whether the district court correctly concluded that

Hardin was not bound by the DRP.  Finally, if we find the district court in error,

we determine whether the court's decision should nevertheless be affirmed on the

alternate ground that the DRP is illusory and therefore unenforceable.

### A.  Jurisdictional Concerns

Hardin raises two separate jurisdictional concerns: (1) whether First Cash's

appeal automatically divested the district court of jurisdiction; and (2) whether

this court has jurisdiction over the instant appeal.

#### 1.  District Court Jurisdiction

Hardin asserts that the district court erred by issuing a stay pending the

resolution of First Cash's appeal to this court.  She argues that First Cash's appeal

did not automatically divest the district court of jurisdiction.  Instead, she argues,

a stay should have been granted only if First Cash initially demonstrated to the

---

[1](...continued)
*Corp.*, 770 P.2d 24, 26 (Okla. 1989) (noting that indefinite employment contracts
constitute employment at-will).

-5-

court its entitlement to a stay and the court then balanced the respective harms to the parties to conclude a stay was appropriate. After reviewing the district court's decision for abuse of discretion, we disagree. *See Reed v. Bennett*, 312 F.3d 1190, 1193 n.1 (10th Cir. 2002).

A party aggrieved by a district court's denial of a motion to compel arbitration has the right under the FAA to file an interlocutory appeal. *McCauley v. Halliburton Energy Servs.,* 413 F.3d 1158, 1160 (10th Cir. 2005); *see* 9 U.S.C. § 16(a)(1)(B) (permitting appeal from an order denying a petition to compel arbitration under 9 U.S.C. § 4). When a non-frivolous § 16(a) appeal is taken, the district court is automatically and immediately divested of jurisdiction. *McCauley*, 413 F.3d at 1162. However, "the district court may frustrate any litigant's attempt to exploit the categorical divestiture rule by taking the affirmative step, after a hearing, of certifying the § 16(a) appeal as frivolous or forfeited." *Id*. Here, the district court rejected Hardin's contention that an appeal would be frivolous.

Because First Cash appealed the district court's denial of its motion to compel arbitration under § 16(a), and First Cash's appeal is not frivolous, we find that the appeal divested the district court of jurisdiction. Therefore, the district court properly issued a stay.[2]

---

[2] Hardin asks us to clarify *McCauley* to hold that district courts are divested of jurisdiction only as to dispositive matters, while they retain discretion for non-
(continued...)

*2. Appellate Jurisdiction*

We have jurisdiction over final orders "denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). Hardin argues that pursuant to § 4 the district court did not issue a final order. First, she argues that there is no final order because the district court did not conduct either a trial by jury, bench trial, or summary judgment proceeding before ruling on the arbitration agreement. Second, Hardin argues that we cannot construe the district court's order denying arbitration as one for summary judgment. Finally, Hardin asserts that, in any case, no final order exists because First Cash never conceded that the district court's order was final, thereby preserving its right to assert a trial on the issue of contract formation.

Under 9 U.S.C. § 4,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . for an order directing

---

[2](...continued) dispositive matters such as amendments to pleadings and discovery. We fail to see how such non-dispositive matters are "matters not involved in [the] appeal." *See McCauley*, 413 F.3d at 1161 (quoting *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990)). Furthermore, allowing a district court to retain jurisdiction of such matters would disrupt the very purpose of an arbitration appeal: "Arbitration clauses reflect the parties' preference for *non-judicial* dispute resolution . . . ." *Id.* at 1162 (quotation omitted) (emphasis added). Arbitration is an attempt to avoid unnecessary court costs; by keeping non-dispositive matters within the purview of the district court, the parties continue to face costs for which they did not bargain.

that such arbitration proceed in the manner provided for in such agreement.

In the event that the making of the arbitration agreement is in dispute,

> the court shall proceed summarily to the trial thereof [but if] no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue.

*Id.*

> Under our cases,

> The existence of an agreement to arbitrate "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement.

*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995)).

Based on the statutory text and our precedent, we find Hardin's arguments unpersuasive. First, although the parties disputed the application of the DRP, the court was able to resolve that question on the pleadings and other materials before it. *See id.* Accordingly, no jury or bench trial was necessary, and the district court properly issued an order denying First Cash's motion to compel arbitration. Even if a trial were warranted, the plain language of § 4 permits only the "party alleged to be in default" to request a jury trial. Hardin, the party refusing arbitration, is that party, not First Cash.

Second, Hardin's contention that the district court order cannot be properly construed as one for summary judgment also fails. As a preliminary matter, we reject Hardin's assertion that the court must either proceed to trial or issue a summary judgment order. Section 4 merely states that if a jury trial is not warranted, "the court shall hear and determine such issue." 9 U.S.C. § 4. This is exactly what the district court did. Indeed, the plain language of § 16(a)(1)(B) permits an appeal "from an order denying a petition under [§ 4] to order arbitration to proceed." Again, this is exactly what we have here. Therefore, the court's order denying First Cash's motion to compel arbitration is appealable as a final order. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 411–13 (7th Cir. 2002) (holding that because § 16 does not distinguish between orders denying arbitration and final orders that reach the same end and because the purpose of the FAA would be defeated if a simple order denying a motion to compel was not appealable, any denial of a motion to compel arbitration is immediately appealable).

In short, the district court properly heard and determined First Cash's motion under § 4, issuing a final order refusing to compel arbitration. We therefore have jurisdiction to hear this appeal.

* * * * *

Accordingly, because First Cash's appeal automatically and immediately divested the district court of jurisdiction, we affirm the district court's order

-9-

granting First Cash's motion to stay. We find that the district court issued a final order under § 4 of the FAA, and we therefore exercise our jurisdiction to hear this appeal.

## B. *Acceptance of Arbitration Agreement*

First Cash's primary argument on appeal is that the district court improperly denied its motion to compel arbitration because Hardin's conduct evidenced an intention to be bound by the DRP. In deciding the merits of this contention, we, like the district court, must answer an unresolved question of Oklahoma law.

Generally, courts "should apply ordinary state-law principles that govern the formation of contracts" to determine whether a party has agreed to arbitrate a dispute. *First Options*, 514 U.S. 938, at 944. Here, because it is undisputed that Oklahoma contract principles guide our analysis, we review the district court's determinations of that law de novo, employing the same legal standards applied by the district court. *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1218 (10th Cir. 2005); *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1166 (10th Cir. 1999). We begin with an examination of case law from Oklahoma's highest court. *Cooper v. Cent. & Sw. Servs.*, 271 F.3d 1247, 1251 (10th Cir. 2001). However, where that court has not yet ruled, we "determine what decision the state court would make if faced with the same facts and issue." *Oliveros v. Mitchell,* 449 F.3d 1091, 1093 (10th Cir. 2006), by considering "state court

decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).

First Cash argues that Oklahoma law permits an employee's continued employment to manifest her assent to an employer's proposed modification of an at-will employment relationship even where she expressly rejects the modification. Although we find Oklahoma law unclear on this point, we ultimately find that Hardin's conduct did act to accept the DRP—because First Cash rejected Hardin's counteroffer (to continue employment on the old terms), her decision to remain on the job after March 1 manifested her assent to First Cash's outstanding offer to modify the terms of her at-will employment.

In general, Oklahoma follows traditional contract principles in permitting acceptance of an offer by performance: "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Okla. Stat. tit. 15, § 70; *see generally* Restatement (Second) of Contracts § 19 (1981) ("The manifestation of assent may be made wholly or partly by written or spoken words *or by other acts or by failure to act*.") (emphasis added). Indeed, the Oklahoma Court of Appeals has applied this concept in the employment context. In *Langdon v. Saga Corp.*, 569 P.2d 524, 527 (Okla. Civ. App. 1976), the court held that an employer's personnel policies extending benefits to its employees could be "accepted by continued performance." *Id.* at 528. In reaching this decision, the court noted a unilateral

contract, such as an employer's personnel manual, "contemplate[s] an offer which is accepted by performance rather than a promise of performance." *Id.* at 527; *see Hinson v. Cameron*, 742 P.2d 549, 555 (Okla. 1987) (finding *Langdon*'s holding "compatible" with its precedent).

To be sure, the instant case involves an offer, the DRP, which contemplates acceptance by performance. At the same time, however, this case is distinguishable from *Langdon*. First, the DRP is arguably not an employee benefit, but instead acts to restrict the employee's legal options to sue the company. More fundamentally, Hardin expressly rejected the DRP. The question, therefore, is whether these two factors alter the *Langdon* calculus.

Oklahoma law does not definitively answer this question. On one hand, Oklahoma law provides that "[a]n acceptance must be absolute and unqualified . . . . A qualified acceptance is a new proposal." Okla. Stat. tit. 15, § 71. The plain language of the statute suggests that Hardin's statements would be sufficient to reject the proposed modification. *Langdon*, however, strongly suggests a different rule in the context of employee terms and conditions. The Oklahoma Supreme Court, moreover, has held in the employment context that an employee's protest is ineffective against a unilateral change in an at-will employment contract when that employee continues his employment. *Robinson v. Phillips Petroleum Co.*, 54 P.2d 322 (Okla. 1936) (per curiam).

In *Robinson*, an employer reduced the plaintiff employee's commission rate. The plaintiff protested the change, but continued his employment. *Id.* The court held that the employee's continued performance manifested assent to the altered employment contract. The court stated,

> An employment terminable at any time is . . . subject to modification at any time by either party as a condition of its continuance. In our opinion, the contract involved in this action is such a contract, and when plaintiff was notified by defendant that [his commission rate was being reduced], he was at liberty to treat the contract as totally rescinded and quit the employment of the defendant, but he could not remain in such employment and simply by protest against change in the rate of commission continue the original contract in force.

*Id.* at 322–23 (quotation omitted); *see also Willock v. Downtown Airpark, Inc.*, 130 F. Supp. 704, 706 n.5 (D. Okla. 1955) (citing *Robinson* for the proposition that "the acceptance by plaintiff of new terms of employment by continuing to work for defendant . . . amount to a valid modification of the original agreement").

Were we to consider either § 71 or *Robinson* in isolation, this would be a cleaner case. However, in combination it is difficult to predict under Oklahoma law whether continued employment, in the face of an express rejection, manifests assent to a unilateral change in an at-will employment contract. On balance, we are persuaded Oklahoma law would permit modifications to the terms of employment by performance in the circumstances here. Nevertheless, we need

not definitively resolve any tension of Oklahoma law, because this case can also be resolved on classic contract principles of offer, counteroffer, and acceptance.

Here, First Cash, in the explicit language of the Agreement, made an offer to Hardin, which stated that her continued employment after March 1 would manifest her assent to the DRP. Hardin, in equally explicit language, made a counteroffer and informed her supervisor that she refused to abide by those terms. First Cash immediately rejected this counteroffer when Hardin's supervisor reiterated that her continued employment would serve as her acceptance.

Typically, "[a]n offeree's power of acceptance is terminated by [her] making of a counter-offer." Restatement (Second) of Contracts § 39(2) (1981). This is not the case, though, where the "offeror has manifested a contrary intention." *Id.*; *see id.* § 38(1) ("An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention."). For example, "a statement in the offer that it will continue in effect despite a rejection is effective, and a similar statement after a rejection makes a new offer [that is effective]." *Id.* § 38 cmt. b; *see id.* § 39 cmt. a ("A counter-offer must be capable of being accepted; it carries negotiations on rather than breaking them off.").

In its offer, First Cash manifested a "contrary intention" not to end negotiations. First Cash specifically informed the employees that the offer continued in effect until March 1, but that they did not have to accept the terms of

-14-

the DRP until that time. Additionally, First Cash repeated its offer in early 2003 when it posted a reminder notice that continued employment after March 1 would constitute acceptance of the DRP. In other words, the Agreement as well as the posting manifested First Cash's contrary intention not to permit a counteroffer to terminate the employee's power of acceptance.

Indeed, March 1 came and went and Hardin never renewed her objection. In the face of these facts, Hardin came to work. We, therefore, construe Hardin's continued employment after March 1 as acceptance of the terms of the DRP.[3] *See Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006) (finding an employee, who refused to sign an arbitration agreement, but continued employment assented to the terms of the program where the agreement explicitly stated that an employee's continued employment constituted acceptance and the company personally informed the employee that failure to sign would not alter the effect of the agreement).

Accordingly, we find that under Oklahoma law Hardin's conduct in continuing employment after March 1 manifested her assent to be bound by the terms of the arbitration agreement.

---

[3] For the first time on appeal, First Cash argues that Okla. Stat. tit. 15, § 74 is relevant to our analysis. Section 74 states that "[a] contract which is voidable, solely for want of due consent may be ratified by a subsequent consent." Because First Cash failed to raise this argument before the district court, we do not consider it here. *See Wolfe v. Barnhart*, 446 F.3d 1096, 1103 (10th Cir. 2006) (noting that a party waives arguments not raised in the district court).

## C. Illusory Contract

Because we find that Hardin's conduct served to accept the arbitration agreement, we must determine whether the contract nonetheless is enforceable. Hardin suggests that since the contract reserves to First Cash a unilateral right to terminate or amend the DRP, the contract is illusory and, consequently, unenforceable. We are not persuaded.

The Agreement states that First Cash "retains the right to terminate the [Agreement], and/or to modify or discontinue the [DRP]." Cross-Aplt. App. at 49; *accord id.* at 61. However, this right is limited: "[N]o amendment shall apply to any claims, disputes, or controversies of which the Company had actual notice on the date of the amendment, and termination of the [Agreement and/or DRP] shall not be effective until 10 days after reasonable notice of termination is given to Employee or as to claims, disputes, or controversies which arose prior to the date of termination." *Id.* at 49, 61.

We have held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). Here, though, First Cash's right to modify the Agreement was not unrestricted. For example, before amending or terminating the Agreement, First Cash must provide 10-days notice to its current employees. Additionally, it cannot amend the Agreement if it has actual notice of a potential dispute or claim, nor may it

-16-

terminate the Agreement as to any claims which arose prior to the date of termination.

These limitations are sufficient to avoid rendering the parties' Agreement to arbitrate illusory. While "the reservation of a unilateral right to cancel [an] entire agreement is so broad as to negate the existence of any consideration in that the promise is essentially empty or illusory," if "notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration." *Wilson v. Gifford-Hill & Co., Inc.*, 570 P.2d 624, 626 (Okla. Civ. App. 1977); *see Pierce v. Kellogg, Brown & Root, Inc.*, 245 F. Supp. 2d 1212, 1215 (D. Okla. 2003) (applying Oklahoma law and finding an arbitration agreement enforceable that permitted the company to amend or terminate on 10-days notice); *see also In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex. 2002) (finding an arbitration agreement not illusory where the employer's right to modify was restricted in cases where it had actual notice of the dispute and required 10-days notice to employees before termination).

Hardin relies on the Ninth Circuit's opinion in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), to argue that the restrictions are insufficient to save the Agreement. In *Ingle*, the defendant company's unilateral right to modify an arbitration agreement was restricted in only one respect: modifications required 30 days notice to employees. The court concluded that a 30-day "notice

is trivial when there is no meaningful opportunity to negotiate the terms of the agreement." *Id.* at 1179. Finding a lack of mutuality in the right to modify, the court held that the modification provision was "substantively unconscionable." *Id.*

Hardin's reliance on *Ingle* is misplaced. First, Oklahoma law suggests that reasonable modification provisions are permissible, unlike in *Ingle* where the court was applying California law. More critically, however, the *Ingle* court explicitly stated that it drew "no conclusion as to whether [the modification clause], by itself, renders the [entire arbitration] contract unenforceable," begging the question of whether the agreement was still effective. *Id.* at n.23.

We conclude under Oklahoma law that an arbitration agreement allowing a defendant company the unilateral right to modify or terminate the agreement is not illusory so long as reasonable restrictions are placed on this right. *See Wilson*, 570 P.2d at 626; *Pierce*, 245 F. Supp. at 1215; *see also Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 91 n.5 (4th Cir. 2005) (rejecting a similar claim); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173–74 (5th Cir. 2004) (same); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667–68 (6th Cir. 2003) (same); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1376–77 (11th Cir. 2005) (same). The Agreement here satisfies Oklahoma law and is therefore enforceable.

-18-

### III. Conclusion

Accordingly, because we hold that under Oklahoma law Hardin's conduct constituted acceptance of the terms of the arbitration agreement and because such Agreement was not illusory, we REVERSE the district court's order denying First Cash's motion to compel arbitration and REMAND for proceedings consistent with this opinion. We AFFIRM the district court's order granting a stay pending this appeal.