2007 OK 75

**Irene Stephanie THOMPSON, Plaintiff/Appellee,**

v.

**BAR–S FOODS COMPANY, a Delaware corporation, Defendant/Appellant.**

**No. 101,973.**

Supreme Court of Oklahoma.

Oct. 2, 2007.

Rehearing Denied Dec. 13, 2007.

Taylor K. Hammett, Midwest City, OK, for Plaintiff/Appellee.

Gayle Barrett, Adam W. Childers, Oklahoma City, OK, for Defendant/Appellant.

## OPINION

WATT, J.

¶ 1 In this case we decide whether Plaintiff/Appellee Irene Stephanie Thompson is required to submit her state law retaliatory discharge claim to arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. Her claim originated in state district court pursuant to the Oklahoma Workers' Compensation Act (WCA), specifically the provisions at 85 O.S.2001 § 5 [1] (since amended). Under the facts of this case, we hold Appellee Thompson is not required to submit her claim to arbitration. The opinion of the Court of Civil Appeals (COCA) is vacated. The order of the trial court is affirmed but remanded for further proceedings in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 When Thompson applied for employment with Defendant/Appellant Bar–S Foods Company, she signed an application which she dated on March 14, 2000. The application requested general information such as previous experience, education, special skills and qualifications, possible criminal background and references. Below the space provided for the name of her emergency

---

1. 85 O.S.2001 § 5, in effect at the time this action began, provided:

A. No person, firm, partnership, corporation, or other entity may discharge, or, except for non-payment of premium, terminate any group health insurance of any employee because the employee has in good faith:
1. Filed a claim;
2. Retained a lawyer for representation regarding a claim;
3. Instituted or caused to be instituted, any proceeding under the provisions of this title; or
4. Testified or is about to testify in any proceeding under the provisions of this title; or
5. Elected to participate or not to participate in a certified workplace medical plan as provided in Section 14 of this title.

B. No person, firm partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work.

C. After an employee's period of temporary total disability has ended, no person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform his assigned duties. The failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of this section.

In 2005, the Legislature added the following to 85 O.S.2001 § 5:

D. No person, firm, partnership, corporation or other entity may discharge an employee for the purpose of avoiding payment of temporary total disability benefits to the injured employee.

contact, which was contained within a box, was the following: APPLICANTS ARE RE-QUIRED TO READ THE FOLLOWING STATEMENTS. Below that heading, in type which is noticeably smaller than the rest of the application, are eight paragraphs followed by spaces for her signature and the date. The material contained within that portion of the application includes a broad range of subjects, including a certification the information is true and correct, the understanding that an investigative report may be made based on interviews with third parties, the release of records, and the agreement to provide acceptable proof of her birth within thirty days of the initial date of employment.

¶ 3 In addition to the subjects covered above, the application [2] required her consent to provide blood and urine samples for analysis when requested and to abide by the terms of all Bar–S rules, guidelines, policies, procedures, and Employee Handbook provisions, both current and as modified in the future. The application also contained requirements to utilize the Bar–S "Problem Resolution Process" (PRP) to resolve grievances and disputes "related to my employment or termination of my employment," to submit unresolved disputes to arbitration as provided in the PRP, and to waive her right to a jury trial of claims arising from her employment or termination of her employment. Near the signature line, the application also provides:

2. The employment application provides:

> As conditions of my employment with Bar–S foods Co., I hereby consent: (1) to provide samples of my blood and/or urine for analysis when reasonably requested during the course of my employment and to comply with the Bar–S Foods Co. Drug and Alcohol Testing Policy; (2) to utilize the Bar–S Foods Co. Problem Resolution Process to resolve any and all grievances, claims, and disputes which are in any way related to my employment or termination of my employment; (3) to submit unresolved legal claims or disputes which are in any way related to my employment or termination of my employment to exclusive, final, and binding arbitration as provided in the Bar–S Foods Co. Problem Resolution Process; (4) to abide by the terms and conditions of all current Bar–S rules, guidelines, policies, procedures, and Employee Handbook provisions, as those terms and conditions may be modified by Bar–S Foods Co. from time to time.

I understand that no offer of employment by any agent of Bar–S Foods Co. shall be considered valid until after completion of the entire application process including, but not limited to, an interview, and testing for alcohol, controlled substances, illegal drugs, and background checks.

I have read, understand, and by my signature consent to these statements.

¶ 4 When hired on April 19, 2000, Thompson signed a document which acknowledges that a copy of the Problem Resolution Process (PRP) is available on the bulletin board and in the personnel office. The signed document provides:

> On this date I have received a copy of the Bar–S Foods Co. hourly employee handbook. I will read it carefully and if I have any questions, I will discuss them with my supervisor or or (sic) the Personnel department.

> Management has prepared the hourly employee handbook in order that I will be aware of Bar–S Foods Co. policies and procedures. Any further clarification and/or interpretation of the handbook is at the discretion of the management of Bar–S Foods Co.

> I understand a copy of the Problem Resolution Process, the Attendance policy and the Disciplinary guidelines (sic) are posted on the plant bulletin board for my review,

> I understand and agree that my employment by Bar–S Foods is conditioned upon my consent to submit any legal claim or dispute which in any way relates to my employment or termination of my employment to exclusive, final, and binding arbitration in accordance with the current Bar–S Foods Co. Problem Resolution Process, a copy of which has been made available for my review. I understand that this requirement of exclusive, final and binding arbitration applies to any claim of unlawful harassment or discrimination arising under Title VII of the Civil Rights Act of 1964, as amended; under the Age Discrimination in Employment Act, as amended; or under any similar state anti-discrimination statutes, as well as to any other legal claims or disputes arising from my employment or termination of my employment. As a condition of my employment by Bar–S Foods Co., I expressly waive any right I might otherwise have had to a jury trial of claims arising from my employment or termination of my employment.

or I may request a copy from the Personnel office.

**I understand that all of the afore mentioned documents are subject to change by Bar–S from time to time without notice.** I understand that violations of the rules of conduct will result in disciplinary action. Statements made regarding insurance are subject to the provisions and terms of the master policy or policies. Please refer to the plan booklet or certificates for specific details. [emphasis added]. Employee signature: s/ Stephanie Thompson

Date: 4–19–00

¶ 5 Approximately two years after she was hired, Thompson filed a workers' compensation claim for injuries she received which arose out of her employment with Bar–S. While receiving benefits for temporary total disability, she was advised she was being placed on a 90–day layoff. At the end of that period, she was advised her employment was terminated. Thompson sued Bar–S pursuant to 85 O.S.2001 § 5 on December 1, 2004, alleging her employment was wrongfully terminated because she filed a workers' compensation claim.

¶ 6 Bar–S moved to dismiss, or in the alternative, to compel arbitration and to stay the proceedings. Bar–S claimed the parties had agreed to resolve all claims through arbitration. Thompson's affidavit in support of her response to Bar–S's motion to dismiss contains the statement that neither at the time she signed her application nor at the time she was hired did she see a copy of the PRP, nor did she sign it. The trial court overruled Bar–S's motion. It held Thompson's agreement to "mediate" any claims regarding her employment did not excuse Bar–S's compliance with the WCA, 85 O.S.2001 §§ 1–211, or constitute a waiver of the protection provided Thompson under the Act.[3] The trial court also entered an agreed order staying the proceeding pending appeal. Bar–S appealed the order which is appealable by right. 12 O.S. Supp.2005, § 1879(A)(1); Okla.Sup.Ct.R. 1.60(i), 12 O.S. 2001, Ch. 15, App.[4]

¶ 7 The Court of Civil Appeals (COCA) reversed and remanded, stating:

The Trial Court refused to compel arbitration because it determined that, despite her agreement to arbitrate, Thompson's right to litigate her retaliatory discharge claim in district court could not be waived. In her employment agreement with Bar–S, Thompson did not waive the right to pursue her statutory claim, she merely agreed to have that claim resolved by an arbitrator rather than the court. For the reasons previously discussed, the determinations that Thompson agreed to arbitrate and that the arbitration agreement assigned the issue of arbitrability to the arbitrator required the Trial Court to Grant Bar–S's motion.

This Court previously granted Thompson's petition for writ of certiorari.

---

3. The trial court's rationale for denying the motion to dismiss/motion to compel is found in the written decision, filed March 9, 2005, and attached to the Journal Entry of Judgment filed March 24, 2005, denying Bar–S's motion. It provides, in part:

The plaintiff did agree to mediate any claims regarding her employment when she became employed at Bar–S. However, in the instant action, the plaintiff asserts a right created by statute in Oklahoma.

I do not see where the employment agreement addressed the issue of workers comp claims other than to exclude claims covered by workers comp from the process. The fact that the employer (the defendant in this case) requires that employees (plaintiff in this case) (sic) to consent to mediation as a condition of employment does not excuse the defendant from complying with the state's workers comp law. And if the employer must comply with the worker's comp law, how could this court find that the plaintiff waives the protection of that act? The defendant attaches several relevant rulings of other courts; however none of them deal with a workers comp claim (so far as I can tell).

My decision is that defendant's motion to dismiss must be denied and overruled. In making this decision I make no assumptions regarding the validity or invalidity of the plaintiff's claim.

4. Supreme Court Rule 1.60(i) refers to district court orders made under the provisions of 15 O.S.1991 § 817, part of the Oklahoma Uniform Arbitration Act which was recodified at 12 O.S. Supp.2005, §§ 1851 et seq. Under the recodified statute, 12 O.S. Supp.2005 § 1879(A)(1) allows for an appeal from an order denying a motion to compel arbitration.

## BURDEN OF PROOF AND STANDARD OF REVIEW

■ ¶ 8 In a case in which arbitration is being urged as the appropriate forum for resolving disputes, the "burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue; an intention discernible from the statute's text or legislative history or 'an inherent conflict between arbitration and the statute's underlying purposes.'" *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, ¶ 22, 155 P.3d 16, 25, quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2338, 96 L.Ed.2d 185.

■ ¶ 9 We review an order granting or denying a motion to compel arbitration *de novo*, the same standard of review employed by the trial court. See *Fleming Companies, Inc. v. Tru Discount Foods*, 1999 OK CIV APP 18, 977 P.2d 367 (cert.denied, 1999); *Towe, Hester & Erwin, Inc., v. Kansas City Fire & Marine Insurance Company*, 1997 OK CIV APP 58, 947 P.2d 594 (cert.denied, 1997). Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Fleming Companies, Inc. v. Tru Discount Foods*, 1999 OK CIV APP 18, ¶ 16, 977 P.2d 367, 371, citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

### COCA'S DECISION

¶ 10 COCA found Thompson did not argue the FAA was not applicable to this case, only that the arbitration agreement should not be enforced. She raised the issues that the agreement was unfair, contrary to Oklahoma law and the invalidity of the contract based in part on the manner in which the agreements were drafted and presented. In analyzing the application and the arbitration agreement, COCA held the trial court erred when it determined there was an agreement to arbitrate, but denied the motion to compel. COCA ruled the trial court should have granted the motion to compel and that an arbitrator should then have been allowed to determine the arbitrability issue, i.e., whether a valid agreement to arbitrate the retaliatory discharge claim exists, because the parties agreed the FAA would apply to issues of arbitrability. COCA found Thompson agreed to arbitrate and agreed to be governed by the FAA. It failed, however, to consider the issue raised by Thompson that no valid contract existed because of the "manner in which the agreements were drafted and presented." See COCA opinion, ¶ 5.

### CONTENTIONS

¶ 11 Citing 85 O.S.2001 § 7, Thompson alleges the Oklahoma Legislature determined that retaliatory discharge actions relating to the WCA are to be resolved in the district courts of Oklahoma. Section 7 provides:

> Except as otherwise provided for by law, the district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act.

¶ 12 Bar–S contends § 7 does not show legislative intent to create **exclusive** jurisdiction in the district courts of Oklahoma and that even if it had so intended, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16,[5] preempts 85 O.S.2001 § 7.[6] It further argues the United States Supreme Court has ruled that employers may require arbitration of employment-related claims and rejects

---

5. 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

6. Bar–S contends Thompson's argument for exclusive jurisdiction in the district court should not be considered because it was not raised in the trial court or on appeal before the Court of Civil Appeals. However, because this issue affects our jurisdiction, we will consider it.

Thompson's position that Oklahoma courts have found similar arbitration agreements unenforceable.

¶ 13 In the trial court and on appeal, Thompson did not dispute that the FAA applies to this case. She argued the arbitration agreement is fundamentally unfair and should not be enforced because it would prevent the pursuit of her claim under 85 O.S. § 5, in which the state district court "shall have jurisdiction." See 85 O.S.2001 § 7.[7] She also argued the agreement is unfair because of the parties' unequal bargaining power and her lack of education. She also alleged a lack of mutuality.[8] However, in Thompson's petition for certiorari,[9] she states an apparently different position from the one she took earlier. She states:

> The Appellee did state several times in the briefs filed in the District Court of Beckham County and the Court of Civil Appeals that the Federal Arbitration Act would apply to wrongful discharge claims under 85 O.S.2001, § 5; these statements are incorrect and the Appellee would now withdraw any statement of this nature.

¶ 14 While ordinarily a plaintiff would not be allowed to raise new issues at this stage of the proceedings, see 12 O.S.2001 § 992 and Supreme Court Rule 1.179(d), 12 O.S.2001, Ch. 15, App. 1, whether the FAA requires arbitration of Thompson's retaliatory discharge claim must be ultimately determined regardless of her previous position.

¶ 15 Bar–S argues Thompson is bound by her signed agreement to arbitrate claims, and also contends if an applicant later accepts an offer of employment based on an application, it is disingenuous to suggest the content of the offer is not defined by the terms and conditions of the application. Bar–S argues that where a definite condition of continued employment is communicated to an at-will employee, her continued employment manifests assent to the condition and constitutes consideration. It also argues Thompson's acknowledgment of access to the PRP strengthens her obligation to arbitrate. It contends the trial court clearly erred in finding her retaliatory discharge claim was excluded under the PRP [10] and in concluding it required her to waive her statutory rights under the WCA.

¶ 16 Bar–S contends the arbitration procedures reflect mutual obligation of employer and employee. It claims that Thompson's argument that she is barred from the right to arbitrate her claim because she failed to follow the preliminary steps is disingenuous. It contends it waived the preliminary requirements and assured the trial court that Thompson could arbitrate her claim if she paid the fee within the appropriate statute of limitation period. It contends she was clear-

---

7. 85 O.S.2001 § 7 provides:

    Except as otherwise provided for by law, the district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act.

8. This contention is also based on Bar–S's offer to waive her lack of compliance with preliminary steps in the PRP process. Thompson questions whether Bar–S can unilaterally waive these requirements, which if unresolved, would then lead to arbitration, step 5.

9. In her petition for certiorari, Thompson argued COCA's decision established new law in a wrongful discharge claim filed under 85 O.S. §§ 5–7. She raised three reasons for granting certiorari. First, she claims the Bar–S agreement, which gives enforcement responsibility of the Act to an arbitrator, conflicts with legislative intent, because 85 O.S.2001 § 7 provides that district courts have jurisdiction over claims for the retaliatory discharge of Workers' Compensation

claimants. Second, she claims COCA erroneously ruled employers can force employees to sign arbitration clauses as a condition to employment and to waive all rights to a trial on her retaliatory discharge claims, as required by the Bar–S agreement. Third, she contends the agreement is invalid under substantive Oklahoma law and cannot be made valid because an arbitrator is given authority to waive illegal sections of it.

10. The PRP provides the policy of Bar–S is "to resolve any dispute or claim arising from or related to employment or termination of employment through this Problem Resolution Process" and "[i]s the exclusive, final, and binding procedure for resolving all employment-related claims and disputes including but not limited to claims of unlawful employment discrimination, termination in breach of contract, violations of federal or state statutes or public policy, and employment torts, except claims covered by worker's compensation insurance or unemployment insurance." See PRP Description, Paragraph I., *POLICY*.

ly within time. See 12 O.S. Supp.2005 § 95(A)(2).[11]

## FEDERAL ARBITRATION ACT

■ ¶ 17 The PRP provides that the "Arbitration Procedures" for settling disputes are based on the FAA. In determining whether the FAA mandates submission of a claim to arbitration, a two step inquiry is necessary. See *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). First, courts determine whether the arbitration agreement covers the dispute at issue. *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3353. The PRP provides that it includes claims relating to "employment or termination of . . . employment." Thus, it clearly purports to include it. Next, courts must consider whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. It must be determined whether the statutory right at issue is one for which Congress intended to preclude a waiver of judicial remedies. *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354–55.[12]

■ ¶ 18 We look to Section 2 of the FAA.[13] While it requires arbitration of contracts involving commerce, it also provides a qualification which we find applicable to the present case: **"save upon such grounds as exist at law or in equity for the revocation of any contract."** [emphasis added]. The interpretation of an arbitration agreement is

"governed by 'general state-law principles of contract interpretation.'" See *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (citation omitted). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (citations omitted).

■ ¶ 19 An essential element of a contract is sufficient consideration. 15 O.S.2001 § 2.[14] As a general rule, consideration exists as long as there is a benefit to the promisor or a detriment to the promisee. See *Powers Restaurants, Inc. v. Garrison*, 1970 OK 30, ¶ 7, 465 P.2d 761, 763. In the present case, Thompson as the promisor received no benefit; under the terms of the arbitration agreement, she was required to arbitrate her claim and to waive her right to a trial, in exchange for a promise from Bar–S which it could withdraw **without notice**. Bar–S stood to suffer no inconvenience or detriment with the ability to amend at any time.

¶ 20 Oklahoma law has generally recognized the rule of contract law that the reservation of a unilateral right to cancel the entire agreement is so broad that it negates the existence of consideration; the promise is essentially empty or illusory. See *Wilson v. Gifford–Hill & Company, Inc.*, 1977 OK CIV APP 18, 570 P.2d 624 (cert.denied),[15] citing 1

---

11. 12 O.S. Supp.2005 § 95 provides in part:
   A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
   . . .
   2. Within three (3) years: an action upon a liability created by statute other than a forfeiture or penalty; . . . .

12. Although the Supreme Court in *Mitsubishi*, supra, held the FAA required arbitration under the parties' agreement, the Court stated:
   Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'
   473 U.S. 614, 627, 105 S.Ct. 3346, 3354, citing 9 U.S.C. § 2, *Southland Corp. v. Keating*, 465 U.S. 1, 16, n. 11, 104 S.Ct. 852, 861, n. 11, 79 L.Ed.2d

1 (1984), and *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972).

13. See note 5, supra.

14. See also 15 O.S.2001 § 106, Good consideration defined:
   Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

15. The Court of Appeals held in that case that the jury could have construed the language used as a binding agreement to give *notice* of cancellation and thus found adequate consideration.

A Corbin on Contracts § 163 and Calamari and Perillo, Contracts (1970) p. 135. This principle was applied by federal courts in arbitration cases under the FAA, construing Oklahoma law in which the employers have reserved the right to amend the arbitration agreements imposed on their employees to resolve claims and disputes. See *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470 (10th Cir.2006); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212 (E.D.Ok. 2003). In both cases, the courts held the arbitration agreements were not illusory because they required prior notice to the employees before amendment of terms. We cite the above cases approvingly and apply the rule of law to this case.

## DISCUSSION

■ ¶ 21 The existence of an arbitration agreement is governed by principles of state law. *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 14, 138 P.3d 826, 830, citing *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, 933 P.2d 878. "Under the FAA, issues relating only to the validity *of the arbitration provision* are generally subject to a judicial determination." *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 13, 138 P.3d 826, 830 [emphasis added], citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). It is the court's role to determine whether a valid, enforceable agreement to arbitrate the dispute exists. *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 14, 138 P.3d 826, 830 [citations omitted].

¶ 22 In attempting to refute Thompson's argument of lack of mutuality, Bar–S refers to provisions of the PRP itself which require both Bar–S and its employees to submit employment-related claims to arbitration. However, it is undisputed that Bar–S at no time *gave* Thompson a copy of the PRP. We acknowledge she signed the application which provides she knew the PRP was available upon request. The application also provides, however, that no offer is valid before the drug and alcohol testing and the background checks were complete. The applica-

tion is thus not an offer of employment, and Thompson's signature is not an acceptance of an offer. The language in the application attempts to bind Thompson without requiring Bar–S to hire her. She was required at **the time of signing the application** to agree to abide by Bar–S's "rules, guidelines, policies, procedures, and Employee Handbook provisions" without knowing what those rules and policies were. Moreover, in order to apply for a job she was required to agree to resolve future disputes through arbitration and to waive a jury trial without knowing what the arbitration procedures required.

¶ 23 We acknowledge Bar–S's citations of authority in which arbitration agreements in employment applications have been upheld as valid agreements to arbitrate, *see e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) and *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir.2002). The present case is distinguishable, however, because of the subsequent document Thompson signed.

¶ 24 As noted above, when Thompson was hired on April 19, 2000, she signed a document acknowledging receipt of the employee handbook.[16] This document referred to the PRP as being available on the bulletin board and at the personnel office **upon request.** The provision referring to availability of the PRP persuades us it was not contained in the handbook she received, nor was a separate copy of it given to her at that time. Therefore, despite Bar–S's contention that Thompson is bound by the PRP's terms, she was never given a copy of it.

¶ 25 The document signed on April 19, 2000,[17] contains the statement, "I understand that all of the afore mentioned documents are subject to change by Bar–S from time to time **without notice.**" [emphasis added]. The PRP is clearly one of the "afore mentioned documents." Thus, Bar–S gave itself the unilateral right to modify the PRP, which contains the arbitration provisions, at any time.

¶ 26 Thompson has repeatedly raised the issue of the unfairness of the PRP and the

**16.** The employee handbook is not part of the record on appeal.

**17.** See ¶ 4, supra.

circumstances under which she signed the pre-employment application and the post-employment acknowledgment. She swore she did not read the PRP, and as we have noted, Bar–S never gave her a copy of it. The courts of other states have considered similar issues relating to arbitration agreements in employment-related cases which we find instructive.

¶ 27 In *Ex Parte Beasley,* 712 So.2d 338 (Ala.1998), Beasley's employer instituted a new employment policy requiring arbitration of employment-related disputes. Notice of the policy was provided by issuing an employee handbook which contained the arbitration agreement. Beasley was an employee when this new policy began, and her continued employment was conditioned on acknowledging receipt of the new handbook, in writing. After signing the acknowledgment, she was terminated. The trial court granted the employer's motion to compel arbitration.

¶ 28 The acknowledgment Beasley signed provides in part that "no written statement or agreement in this handbook concerning employment is binding, **since provisions are subject to change,** and as all … employees are employed on an 'at will' basis." [emphasis added]. *Beasley,* 712 So.2d at 340. Beasley argued that provision precluded the existence of a contract because her employer would be allowed to choose which provisions it wished to enforce. The Supreme Court of Alabama agreed and granted Beasley's petition for writ of mandamus directing the trial court to vacate its order compelling arbitration. The Court held that the disclaimer in the acknowledgment form that no written statement in the handbook is binding "vitiates the operative effect of the arbitration provision contained in the standard employee handbook. The plain meaning of the phrase 'no written statement' would include the statement in the standard employee handbook that the employee 'will use binding, independent arbitration as the final step in [his] complaint process.' " [citations omitted] *Id.,* at 340. Beasley left unsigned an acknowledgment form which contained only the arbitration clause. "Absent Beasley's signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against Brookwood." *Beasley,* 712 So.2d at 341, citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (arbitration is required only for those claims the parties expressly agreed to arbitrate).

¶ 29 In a later case, the Supreme Court of Alabama distinguished *Beasley.* See *Baptist Health System, Inc. v. Mack,* 860 So.2d 1265 (Ala.2003). The court held the employee, Mack, was bound by an acknowledgment she signed in which she agreed to arbitrate employment-related disputes. Mack argued she was not required to arbitrate because she signed an acknowledgment form that did not contain an arbitration provision, citing *Beasley,* supra. The Court disagreed, noting it had held in *Beasley* that if Beasley had signed the acknowledgment form which set apart and included the arbitration agreement, she would have been obligated to arbitrate her dispute. The Court found the language in the Program document in *Mack* introducing its new arbitration policy was comparable to the language in the acknowledgment form, containing the arbitration agreement, which Beasley **did not sign.** The new policy in *Mack,* entitled "Dispute Resolution Program," was not included in an employee handbook, but it was set out in a **separate document,** similar to the PRP in the present case. It provided that by continuing her employment after receipt of the document, she agreed to be bound by the terms of the Program which constituted a binding contract between her and Employer BHS. Mack signed a document entitled "Acknowledgment of Receipt of BHS Dispute Resolution Program," acknowledging receipt of the Program document and providing that she understood she was obligated to read the document and that it governed her continued employment and all future legal disputes between her and BHS as defined in the document. Also, meetings were held with employees to explain the terms of the Program before it became effective to ensure employees were aware of the arbitration provision contained within the document. Thus, the Supreme Court of Alabama did not disavow *Beasley.* By way of comparison, the Court reaffirmed its holding in *Beasley* by showing

how distinguishing facts cause a different outcome.

¶ 30 In *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex.2003), the Texas Supreme Court ordered a case on appeal remanded for an evidentiary hearing to determine the parties' intentions on an ambiguous statement in the employer's personnel policies. The provision at issue provided that the employer retained a unilateral right to modify "personnel policies" at any time. The court found the term ambiguous because it could not determine whether the term included the arbitration agreement or other certain specified policies. If it included the arbitration agreement, it was illusory because the express terms of the agreement provided the employer was not bound by its terms. "Although we have repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Id.*, at 227.

¶ 31 The *Davidson v. Webster* Court compared it to another Texas case, *In re Halliburton Co.*, 80 S.W.3d 566 (Tex.2002), in which the employer's right to modify an arbitration agreement was also considered. The Texas court held the *Halliburton* arbitration agreement was not illusory because it required ten days' notice of any modification, with only prospective application of any resulting amendments. See also *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760 (Tex.App. 2002), in which the Court of Appeals of Texas, Houston, held an arbitration agreement was supported by mutual promises, finding the employer could not rescind or change employment-related benefits or the arbitration agreement without written agreement from both parties.

¶ 32 The Texas Supreme Court in *Davidson v. Webster, supra*, cited numerous cases which had considered whether arbitration agreements were illusory. One of the citations is to *Dumais v. American Golf Corporation*, 299 F.3d 1216 (10th Cir.2002), in which the Tenth Circuit held an ambiguity in an employee handbook relating to arbitration would be construed against the drafter under New Mexico law. It ultimately held the provision was illusory because it allowed the employer to change the arbitration provision at will. "We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. American Golf Corporation*, 299 F.3d 1216, 1219.

## CONCLUSION

¶ 33 COCA erred in failing to consider whether the agreement signed by Thompson was invalid under basic state law contract principles, as provided by 9 U.S.C. § 2 and the cases cited. The acknowledgment signed by Thompson did not include a copy of the PRP, and the handbook she was given did not contain a copy of it. Moreover, the acknowledgment she signed allowed Bar-S the right to modify the terms of the PRP, as an "afore mentioned document" at any time without notice. Although this Court recognizes the FAA is a valid means of resolving disputes in the workplace, the agreement to arbitrate must be based on a valid contract, supported by consideration. Therefore, under the facts of this case, we hold Thompson is not required to pursue her claim through arbitration.

¶ 34 Although we agree Thompson should be allowed to pursue her claim in district court, the trial court made an erroneous finding that the PRP did not cover the retaliatory discharge claim. However, we hold the trial court correctly denied the motion to compel arbitration. An order of the trial court which reaches the correct result for the wrong reason or on an incorrect theory will not be reversed. See *Jacobs Ranch, L.L.C. v. Smith*, 2006 OK 34, 148 P.3d 842; *Estate of Bartlett*, 1984 OK 9, 680 P.2d 369. The order is thus affirmed, and this case is remanded for a trial on the merits.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ. concur.