2010 OK CIV APP 115

**Noel OSBORN, by and through his Legal Guardians, Rick OSBORN and Terry Osborn, Plaintiffs/Appellees,**

v.

**BROOKDALE SENIOR LIVING, INC.; Brookdale Senior Living, Inc., d/b/a Alterra Sterling House of Edmond; and Bill Godwin, Defendants/Appellants.**

**No. 107,070.**

Court of Civil Appeals of Oklahoma, Division No. 4.

July 12, 2010.

Certiorari Denied Oct. 11, 2010.

tached to Defendants' April 17, 2009, supplemental brief in support of its motion to cancel.

John Wiggins, Emily D. Nash, Wiggins Sewell & Ogletree, Jeff D. Marr, Marr Law Firm, Oklahoma City, OK, for Plaintiffs/Appellees.

John J. Bowling, Thomas A. Le Blanc, Matthew B. Free, Best & Sharp, Tulsa, OK, for Defendants/Appellants.

JOHN F. FISCHER, Judge.

¶ 1 The district court defendants, Brookdale Senior Living, Inc., and Brookdale Senior Living, Inc., d/b/a Alterra Sterling House of Edmond (collectively, Alterra) appeal the district court's Order Denying Motion To Compel Arbitration pursuant to 12 O.S. Supp.2009 § 1879(A)(1). We find that the plaintiff's action is not subject to arbitration, and, therefore, affirm the order of the district court.

## BACKGROUND

¶ 2 Alterra operates an assisted living center. On September 27, 2006, Rick Osborn, as guardian for Noel Osborn, executed Alterra's Residency Agreement securing care and treatment for his ward in Alterra's facility. The Residency Agreement provided for compulsory arbitration of all claims concerning Osborn's care. Noel Osborn resided in Alterra's facility from November 2006 until April 2008. Through his guardians, Osborn filed this suit alleging that Alterra was negligent in providing care and that he suffered injuries as a result of that negligence.

¶ 3 Alterra moved to compel arbitration pursuant to the Residency Agreement. Alterra argued that it was engaged in interstate commerce because it purchased supplies from out-of-state vendors and accepted residents from states other than Oklahoma. Alterra concluded that its Residency Agreement was, therefore, subject to the Federal Arbitration Act (FAA), and the arbitration provision was enforceable. Alterra also sought to avoid the statutory prohibition on arbitration provisions in the Oklahoma Nursing Home Care Act by arguing that it was an assisted living center, not a nursing home or nursing facility. Alterra appeals from the district court's order denying its motion to compel arbitration.

## STANDARD OF REVIEW

¶ 4 The *de novo* standard of review applies to the review of an order granting or denying a motion to compel arbitration. *Thompson v. Bar–S Foods Co.,* 2007 OK 75, ¶ 9, 174 P.3d 567, 572.

## ANALYSIS

¶ 5 The Residential Care Act is codified in Article 8 of Title 63 at sections 1–819 to 1–840. The Residential Care Act governs, among other things, the licensure of "homes." A "home" is defined as a Residential Care Home. 63 O.S. Supp.2003 § 1–820(11). A Residential Care Home is:

any establishment or institution which offers, provides or supports residential accommodations, food service, and supportive assistance to any of its residents or houses

any residents requiring supportive assistance who are not related to the owner or administrator of the home by blood or marriage.

63 O.S. Supp.2003 § 1–820(12)(a).[1]

¶ 6 Residential care homes are required to comply with certain provisions of the Oklahoma Nursing Home Care Act, 63 O.S.2001 and Supp.2006 §§ 1–1900.1 to 1–1943.1, and 1–1950 to 1–1951. Section 1–1939 of that Act prohibits a covered entity from requiring the arbitration of certain disputes between the facility and its residents: "Any waiver by a resident or the legal representative of the resident of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect." 63 O.S. Supp.2003 § 1939(D). "Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect." 63 O.S. Supp.2003 § 1939(E). *See also Bruner v. Timberlane Manor Ltd. P'ship*, 2006 OK 90, ¶¶ 46–47, 155 P.3d 16, 32 (finding that the FAA does not pre-empt the Oklahoma Nursing Home Care Act and that the district court did not err when it applied § 1–1939(D) and (E) to an arbitration agreement contained in a nursing home's admission contract and rendered it unenforceable).

■ ¶ 7 Alterra argues that because it operates an assisted living center rather than a nursing home, its arbitration agreement is not prohibited. Alterra's argument is not supported by traditional principles of statutory construction. The Continuum of Care and Assisted Living Act, 63 O.S.2001 §§ 1–890.1 to 1–894, specifically applicable to the facility operated by Alterra, is included within Article 8 of Title 63, the same Title within which the prohibition on arbitration provisions is located. Section 1–890.2(1) of the Continuum of Care Act defines an assisted living center as follows:

"Assisted living center" means any *home* or establishment offering, coordinating or providing services to two or more persons who:

  a.  are domiciled therein,

  b.  are unrelated to the operator,

  c.  by choice or functional impairments, need assistance with personal care or nursing supervision,

  d.  may need intermittent or unscheduled nursing care,

  e.  may need medication assistance, and

  f.  may need assistance with transfer and/or ambulation.

63 O.S.2001 § 1–890.2 (emphasis added). The Continuum of Care Act does not separately define "home." The only definition of "home" in Article 8 is found at 63 O.S. Supp. 2003 § 1–820(11), which defines "home" as a residential care home.

¶ 8 Further, the services provided by an assisted living center are the same as the services provided by a residential care home. A residential care home is:

any establishment or institution which offers, provides or supports residential accommodations, food service, and supportive assistance to any of its residents or houses any residents requiring supportive assistance who are not related to the owner or administrator of the home by blood or marriage.

63 O.S. Supp.2003 § 1–820(12)(a). The "supportive assistance" provided by an assisted living center is:

the service rendered to any person which is sufficient to enable the person to meet an adequate level of daily living. Supportive assistance includes, but is not limited to, housekeeping, assistance in the preparation of meals, assistance in the safe storage, distribution and administration of medications, and assistance in personal care as necessary for the health and comfort of such person.

63 O.S. Supp.2003 § 1–820(21). Finally, it is clear that the Legislature considered an assisted living center to be a residential care

---

**1.** The exclusions from this definition do not include the facility operated by Alterra and, therefore, are not relevant.

home. *See* 63 O.S.2001 § 1–890.6(A) [2] of the Continuum of Care Act, excluding from the coverage of that Act certain, but not all, residential care homes.

¶ 9 Nonetheless, as Alterra argues, the Nursing Home Care Act provides:

> The Nursing Home Care Act shall not apply to any facility operated by the Oklahoma Department of Veterans Affairs under control of the Oklahoma War Veterans Commission residential care homes, *assisted living facilities or adult companion homes which are operated in conjunction with a nursing facility,* or to hotels, motels, boarding houses, rooming houses, or other places that furnish board or room to their residents.

63 O.S. Supp.2003 § 1–1903(B) (emphasis added). Alterra concludes that this provision excludes assisted living centers from any provision of the Nursing Home Care Act, specifically the provisions of section 1–1939 banning arbitration agreements.[3] Despite the language of section 1–1903(B), Alterra recognizes that a continuum of care facility is subject to certain provisions of the Nursing Home Care Act: "If a continuum of care facility's failure to comply with the Continuum of Care and Assisted Living Act or rules involves nursing care services, the Commissioner shall have authority to exercise additional remedies provided under the Nursing Home Care Act." 63 O.S.2001 § 1–890.6(D). Alterra seeks to avoid application of the Nursing Home Care Act by attempting to distinguish an assisted living center from a continuum of care facility. We find that distinction, to the extent it exists, insufficient to avoid 63 O.S.2001 § 1–840: "Residential care homes subject to the provisions of the Residential Care Act shall comply with the provisions of Sections ... 1–1939 ... of this title." As previously discussed, an assisted living center is a residential care home. Therefore, because the Legislature, in section 1–840, specifically subjected assisted living centers to the prohibition against arbitration agreements in section 1–1939, it was unnecessary for the Legislature to add a redundant provision in the Continuum of Care and Assisted Living Act, accomplishing what had already been done.

## CONCLUSION

¶ 10 Although the facility operated by Alterra in this case is an assisted living center, it is, nonetheless, a residential care home. Alterra's facility is, therefore, subject to the provisions of section 1–1939 of the Nursing Home Care Act. Consequently, the analysis in *Bruner* controls, and the arbitration provision in the Osborn/Alterra Residency Agreement is unenforceable. Because the arbitration agreement is unenforceable, it is unnecessary to discuss the remainder of the issues raised by the parties in this appeal. The district court's Order Denying Motion to Compel Arbitration is affirmed.

¶ 11 **AFFIRMED.**

GABBARD, P.J., concurs, and RAPP, J., dissents.

RAPP, J., dissenting.

¶ 1 I dissent. The trial court defendants, Brookdale Senior Living, Inc. and Brookdale Senior Living, Inc. d.b.a. Alterra Sterling House of Edmond (Alterra) appeal an Order Denying Motion To Compel Arbitration, where the trial court declined to require

---

2. "The Continuum of Care and Assisted Living Act shall not apply to residential care homes, adult companion homes, domiciliary care units operated by the Department of Veterans Affairs, the private residences of persons with developmental disabilities receiving services provided by the Developmental Disabilities Services Division of the Department of Human Services or through the Home and Community–Based Waiver or the Alternative Disposition Plan Waiver of the Oklahoma Health Care Authority, or to hotels, motels, boardinghouses, rooming houses, or other places that furnish board or room to their residents. The Continuum of Care and Assisted Living Act shall not apply to facilities not charging or receiving periodic compensation for services rendered and not receiving any county state or federal assistance." 63 O.S.2001 § 1–890.6(A).

3. Alterra's construction ignores applicable grammatical rules. The emphasized "or" refers to both assisted living facilities and adult companion homes because it is not preceded by a comma signifying an independent clause. Further, the "which" is a restrictive pronoun that refers to both antecedents (assisted living facilities, adult companion homes), joined by the coordinate conjunction "or."

arbitration of the claim of the plaintiffs, Noel Osborn (Osborn) by and through his legal guardians, Rick Osborn and Terry Osborn (Guardians).

¶ 2 Alterra is an assisted living center.[1] Osborn resided there from November 2006 until April 2008. Guardians filed a suit alleging that Alterra was negligent in providing care and that Osborn suffered injuries as a result of the negligence.

¶ 3 On September 27, 2006, Rick Osborn executed the Alterra Residency Agreement (Agreement) on behalf of Osborn and as a Responsible Party. The Agreement specified the basic services to be provided which included living accommodations, meals and staffing. Health care and medical care services were excluded.

¶ 4 Article V of the Agreement has three parts, two of which are in issue in this appeal. The first is Article V(A) Arbitration Provision. There, the Agreement provided for compulsory binding arbitration of all claims and set out extensive provisions relating to the arbitration procedure.

¶ 5 The second is Article V(B) Limitation of Liability Provision and subpart Article V(B)(2), exclusive of Article V(B)(2)(c), which is not in issue in this appeal. This Article offsets damages by collateral source recovery and pain and suffering is limited to a specific dollar amount. Punitive damages are barred.

¶ 6 Alterra moved to compel arbitration as provided in the Agreement. Alterra submitted an affidavit and a copy of the Agreement in support of its motion. The affiant stated that Alterra is an Assisted Living Facility and not a nursing home or nursing facility.

¶ 7 Osborn resisted the motion on the grounds that: (a) The Oklahoma Nursing Home Care Act applies and bans arbitration clauses; (b) Neither the State or Federal arbitration statutes apply to the arbitration clause because the clause is invalid; (c) The Agreement violates the Oklahoma Constitu-

---

1. The parties do not dispute that Alterra is an assisted living facility. An assisted living facility is defined by the Oklahoma Continuum of Care and Assisted Living Act (OCCAL) and regulated by Chapter 663 of the Oklahoma Administrative Code. Amendments to OCCAL taking effect November 1, 2009, are not applicable.

As used in OCCAL, an "Assisted living center" is defined as follows:
    1. "Assisted living center" means any home or establishment offering, coordinating or providing services to two or more persons who:
        a. are domiciled therein,
        b. are unrelated to the operator,
        c. by choice or functional impairments, need assistance with personal care or nursing supervision,
        d. may need intermittent or unscheduled nursing care,
        e. may need medication assistance, and
        f. may need assistance with transfer and/or ambulation
63 O.S. Supp.2008, § 1–890.2(1).
In addition, the statutes define "Continuum of care facility," under OCCAL.
    4. "Continuum of care facility" means a home, establishment or institution providing nursing facility services as defined in Section 1–1902 of this title and one or both of the following:
        a. assisted living center services as defined in the Continuum of Care and Assisted Living Act, and
        b. adult day care center services as defined in Section 1–872 of this title.
63 O.S. Supp.2008, § 1–890.2(4).

The statute defines "Facility" and "Nursing facility" under the Oklahoma Nursing Home Care Act (NHCA).
    9. "Facility" means a nursing facility and a specialized home; provided this term shall not include a residential care home or an adult companion home;
    10. "Nursing facility" means a home, an establishment or an institution, a distinct part of which is primarily engaged in providing:
        a. skilled nursing care and related services for residents who require medical or nursing care,
        b. rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or
        c. on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services beyond the level of care provided by a residential care home and which can be made available to them only through a nursing facility.
"Nursing facility" does not mean, for purposes of Section 1–851.1 of this title, a facility constructed or operated by an entity described in paragraph 7 of subsection B of Section 6201 of Title 74 of the Oklahoma Statutes or the nursing care component of a continuum of care facility, as such term is defined under the Continuum of Care and Assisted Living Act, to the extent that the facility constructed or operated by an entity described in paragraph 7 of subsection B of Section 6201 of Title 74 of the Oklahoma Statutes contains such a nursing care component.
63 O.S. Supp.2008, § 1–1902(9) and (10).

tion and statutes that insure access to courts; and (d) The Agreement is oppressive and unconscionable and thus not enforceable.[2]

¶ 8 Osborn does not dispute that Alterra is a licensed assisted living center.[3] There is no indication in the record that Alterra is licensed as a nursing home facility.

¶ 9 The question is then whether the arbitration provision of the Agreement is banned by 63 O.S. Supp.2008, § 1–1939(D) and (E).[4] The NHCA bans arbitration provisions in nursing home agreements. 63 O.S. Supp. 2008, § 1–1939(D) and (E); *Bruner v. Timberlane Manor Ltd. P'ship*, 2006 OK 90, ¶ 47, 155 P.3d 16, 32 (Oklahoma's Nursing Home Care Act governs over Oklahoma's Uniform Arbitration Act in this case). There is no similar provision in OCCAL, which governs Assisted Living Centers.

¶ 10 Thus, Osborn argues, and the Majority necessarily agrees, "that 63 O.S. § 1–1939(D) of the Nursing Home Care Act applies to Assisted Living Centers through Article 8 of Title 63, entitled 'Residential Care Act,' because assisted living centers fall under the definition of 'residential care home'

provided in the Residential Care Act." [5] This argument fails because the legislature made provisions for care which addressed different needs and established different types of facilities to provide for those care needs. Assisted Living Centers are one type of facility and they are covered under a separate statutory Article of the Public Health Code. The legislature did not incorporate the ban on arbitration contained in the NHCA into the provisions for Assisted Living Centers.

¶ 11 Title 63 of the Oklahoma statutes contains the Public Health and Safety Code. The Code contains a wide-ranging set of statutes within Chapters and Articles. Chapter 1 is the Public Health Code. Chapter 1 contains twenty Articles, which are further divided by category of facilities. In this appeal, the issues concern analysis of some of the Articles and their subdivisions in Chapter 1 of Title 63. This analysis demonstrates that Assisted Living Centers are distinct types of facilities and governed by a particular subsection of Article 8 of Chapter 1 and do not ban arbitration clauses.

¶ 12 Chapter 1 includes *Article 8* and covers a number of facilities, including assisted

**2.** A consequence of my dissent is the necessity to address these additional issues, which the Majority did not do in light of its disposition of the arbitration motion. I would find pre-dispute arbitration clauses do not violate the right to a jury trial or the access to courts provisions of the Oklahoma Constitution. *Rollings v. Thermodyne Industries, Inc.*, 1996 OK 6, ¶ 29, 910 P.2d 1030, 1036 (access to courts); *City of Bethany v. Public Employees Relations Bd. of State of Oklahoma*, 1995 OK 99, ¶ 34, 904 P.2d 604, 615 (jury trial).

The validity of the Agreement's arbitration and liability limitation provisions depends upon whether those provisions are unconscionable and thus unenforceable. Unconscionability has been classified as "substantive" and "procedural."

I would hold that the "Limitation of Liability Provision" of Article V(B)(2) is substantively unconscionable and unenforceable as being in violation of 23 O.S.2001, § 61. Article V(B)(2)(a), providing for collateral source offsets, is likewise invalid. I would find that Article V(B)(2)(b) barring punitive damages is valid. Article V(A)(13) and Article V(B)(1) are likewise invalid to the extent that these provisions incorporate Article V(B)(2)(a) and (b). These invalid provisions are severed from the Agreement pursuant to the Agreement's severability clause.

**3.** Osborn appears to accept the characterization of Alterra as an Assisted Living Facility. The petition alleges that Alterra "had a responsibility to provide assisted living services." The part of

his position that argues for application of an arbitration ban in the Nursing Home Care Act to Assisted Living Facilities necessarily assumes that Alterra is an Assisted Living Facility.

**4.** Section 1–1939(D) and (E) read:

D. Any waiver by a resident or the legal representative of the resident of the right to commence an action under this section, whether oral or in writing, shall be null and void, and without legal force or effect.

E. Any party to an action brought under this section shall be entitled to a trial by jury and any waiver of the right to a trial by a jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect.

**5.** The definitions in the Oklahoma Residential Care Act, 63 O.S. Supp.2008, § 1–820(12) (unchanged to date), provide, in part:

12. "Residential care home":
a. means any establishment or institution which offers, provides or supports residential accommodations, food service, and supportive assistance to any of its residents or houses any residents requiring supportive assistance who are not related to the owner or administrator of the home by blood or marriage.

living (Alterra), residential care, and other specialized care needs and includes Assisted Living Centers. The NHCA is separately codified in *Article 19,* the Nursing Home Care Act.

¶ 13 Article 8 of Title 63 is entitled "Nursing Homes, Rest Homes and Specialized Homes." Statutory divisions of Article 8 pertain to Residential Care, Long-term Care, Hospice Care, Adult Day Care, and what is termed "Continuum of Care and Assisted Living." Other specialized needs for care are addressed also.

¶ 14 The current version of Article 19, the NHCA, began with its enactment in 1980. 1980 Okla. Sess. Laws, c. 241. Section 1–1903(B) then provided that the NHCA did not apply to room and board homes, subsequently changed to residential care homes in the legislation dealing with Residential Care Facilities. 1987 Okla. Sess. Laws, c. 98, § 23. That provision was subsequently eliminated. The tenor of the NHCA shows that it is legislation relating to the care of persons requiring skilled medical care.

¶ 15 The Residential Care Act (RCA), Sections 1–819 and following, began as the "Room And Board Act," 1984 Okla. Sess. Laws, c. 128, and was amended in 1987 to give the Act its present name. The intent of the Act is to provide care and services to persons who remain essentially capable of managing their own affairs and are ambulatory. 63 O.S. Supp.2008, § 1–820(12)(a).

¶ 16 Residential care licensees are required to comply with specific parts of the NHCA. 63 O.S.2001, § 1–840. Those parts are: Sections 1–1909 and 1–1910 (records display and inspection); 1–1914.1 and 1–1914.2 (administrative oversight remedies); 1–1915 (repealed); 1–1918 (patient rights and violations); 1–1919 (authorized access to premises); 1–1920 (protection of patient funds); 1–1921(requirement to enter a written agreement); 1–1922 (residents advisory council); 1–1924 (disclosure of information);

1–1926 and 1–1927 (provisions for involuntary transfers); 1–1930 (facility closing); 1–1939 (liability, including ban on arbitration); 1–1940 (remedies for violations); and 1–1941(ombudsman). As noted above, originally the NHCA specifically provided that it did not apply to the RCA, but such a general exclusion was eliminated and portions of the NHCA were made applicable.

¶ 17 Thus, a residential care facility agreement, like a nursing home agreement, cannot preclude access to courts or trial by jury. Nevertheless, a nursing home and a residential care facility are different from each other. While construing the provisions of an insurance contract, the Court, in *Gillogly v. General Elec. Capital Assurance Co.,* 430 F.3d 1284 (10th Cir.2005), determined that under Oklahoma law, a licensed residential care home was not a nursing home. This follows from the statute's definition of "facility" set out in the NHCA to exclude a residential care home. 63 O.S. Supp.2008, § 1–1902(9) and (10); *Gillogly,* 430 F.3d at 1290–91.[6]

¶ 18 However, under the record before this Court, Alterra comes under a *third* classification called *assisted living.* This classification is the subject of the Continuum of Care And Assisted Living Act codified in Sections 1–890.1–1.894 of Title 63.

¶ 19 The OCCAL recognizes and regulates *two* types of facilities. They are: Assisted Living Center and Continuum of Care Facility. 63 O.S. Supp.2008, § 1–890.2.[7] The Continuum of Care Facility clearly is one of a higher level of care and includes a component of nursing facility services. 63 O.S. Supp. 2008, § 1–890.2(4).

¶ 20 The OCCAL does not apply to residential care homes. 63 O.S.2001, § 1–890.6(A). As a result, the 63 O.S.2001, § 1–840, connection between a residential care facility and a nursing facility does not exist for an OCCAL facility.[8] Therefore, the Ma-

---

**6.** *See* n. 1.

**7.** *See* n. 1. The original version of Section 1–890.2, enacted in 1997, was not changed in relevant provisions by the amendment to Section 1–890.2, effective November 1, 2007. 2007 Okla. Sess. Laws, c. 347 § 1. The amendment effec-

tive in November 2009 also does not affect the pertinent provisions of the statute.

**8.** A continuum of care facility in violation of the law may be subject to the remedies under the

jority's premise grounded on the definition in Section 1–820(12) fails because OCCAL (and its Assisted Living component) does not apply to residential care homes.

¶ 21 The definition of a continuum care facility in Section 1–890.2(4), uses the phrase "providing nursing facility services *as defined* in Section 1–1902 of this title." (Emphasis added.) The definition of a nursing facility set out in NHCA *excludes* the "nursing care component of a continuum of care facility." 63 O.S. Supp.2008, § 1–1902(10). These are not inconsistent. The continuum care facility is one with a higher level of care than the assisted living facility and has a "component" of nursing care services which by definition are the type of services provided in a nursing facility subject to NHCA. However, the use of the same definition in OCCAL for a level of service does not mean that the contract provisions of NHCA, effectively barring arbitration, are incorporated into OCCAL. Statutory provision for services is distinct from statutory provision for what may be in the contract for those services that concerns tort remedies and forums. The legislature could, but did not, include a provision like 63 O.S.2001, § 1–840, making assisted living care licensees subject to Section 1–1939(D) and (E).

¶ 22 Therefore, the trial court's denial of the motion to compel arbitration on the ground that the arbitration provision in Alterra's Agreement was barred by incorporation is error.

## SUMMARY AND CONCLUSION

¶ 23 The Supreme Court has rejected Osborn's arguments that arbitration violates his constitutional and statutory rights. The Arbitration Provisions in Article V(A) of the parties' Agreement are not substantively unconscionable. Osborn has not demonstrated through evidence that Article V(A) is procedurally unconscionable.

¶ 24 I would hold that a portion of the Limitation of Liability Provisions in Article V(B) is unconscionable. Specifically, I would hold that Article V(B)(2)(a) and (b) are invalid and unenforceable. Article V(A)(13) and

Article V(B)(1) are likewise invalid to the extent that these provisions incorporate Article V(B)(2)(a) and (b). Article V(B)(2)(c) is outside the scope of this appeal. I would further hold that the remaining provisions of Article V are valid and enforceable. The contract is severable and the removal of the unenforceable provisions does not require that the Agreement be voided completely.

¶ 25 The bar to arbitration contained in 63 O.S. Supp.2008, § 1939(D) and (E) is not incorporated into the Oklahoma Continuum of Care and Assisted Living Act. This Act governs Alterra and its agreements.

¶ 26 Therefore, the trial court erred in denying the Motion to Compel Arbitration. The judgment of the trial court should be reversed and the cause remanded for further proceedings.

NHCA. 63 O.S.2001, § 1–890.6(D). No similar provision exists for Assisted Living Facilities.